STATE USE OF LONOKE COUNTY *v.* SWAIM.

## Opinion delivered Januaury 12, 1925.

1. COUNTIES—SALARIES OF COUNTY OFFICERS.—Special Acts 1919, p. 294, intended to fix the salaries of Lonoke County officers in full compensation for all services they might render by virtue of their respective offiices.

2. CLERKS OF COURTS—SALARY.—The salary of the circuit clerk of Lonoke County, as fixed by Special Acts 1919, p. 294, covers all services performed by him, including his services as *ex officio* commissioner, under Crawford & Moses' Dig., § 1364.

3. CLERKS OF COURTS—SALARY—FEES OF DEPUTY.—Under Special Acts 1919, p. 294, requiring the circuit clerk of Lonoke County to pay the salaries of his deputies out of his salary, which was to come out of the fees and commissions of the office, and requiring him to pay all amounts in excess of such salary collected by him during each quarter into the county treasury, *held* that he is required to account for fees received by his deputy, acting as commissioner by special appointment of the court, under Crawford & Moses' Dig., § 1365.

4. CLERKS OF COURTS—VALIDITY OF ACT FIXING SALARY.—Without deciding whether Special Acts 1919, p. 294, fixing the salaries of the various officers of Lonoke County, is valid in so far as it fixes the salary of the county treasurer, the act is valid in so far as it fixes the salary of the circuit clerk.

Appeal from Lonoke Chancery Court; *John E. Martineau,* Chancellor; reversed.

*W. J. Waggoner* and *Chas. A. Walls,* for appellant.

The salary of the circuit clerk, together with all of his *ex officio* duties, such as chancery clerk, recorder, commissioner, etc., are included and embraced therein, and that the sum of $4,000 is the limit allowed by the act to the clerk for performing all these services, whether performed by himself or his deputy. Act 173, Acts 1919; 66 Ark. 30; 73 Ark. 305; 88 Ark. 386; 73 Pac. 273; 88 Pac. 89; 71 N. W. 717. The circuit clerk is responsible for all fees, emoluments and commissions received either by himself or his deputies. Art. 7, § 15, Const. 1874; § 1364, C. & M. Digest.

*Coleman, Robinson & House, Trimble & Trimble, Reed & Beard,* for appellee.

The appointment of Albert C. Sexton as commissioner was without regard to his deputyship, and not to evade the law. Every court of record has the inherent power, irrespective of statute, to make rules for the transaction and regulation of its business. 85 S. & R. (Pa.) 336; 1 Peters 604; 34 Mo. 474; 28 Ind. 205; 27 Me. 497. The act is unconstitutional. 66 Ark. 36; 154 Ark. 184; 125 Ark. 101.

*W. J. Waggoner* and *Chas. A. Walls,* in reply, for appellant.

When the circuit clerk assumes the office, he assumes all the duties incident thereto, and no subterfuge can be resorted to to evade the law. There is no distinction between the services performed by the clerk himself and his deputy. Section 1370, C. & M. Digest. So long as the fees fixed by the Legislature are reasonable the courts will uphold them. 66 Ark. 30; 61 Ark. 21; 64 Ark. 515; 73 Ark. 305; 88 Ark. 386.

SMITH, J. This suit was brought by appellant against Pat M. Swaim, as circuit clerk of Lonoke County, and Albert G. Sexton, as deputy, to recover certain excess fees which appellant, the plaintiff below, alleges should have been paid into the county general fund of Lonoke County, as required by special act No. 173 of the Acts of 1919, approved March 4, 1919 (Special Acts 1919, p. 294).

This act No. 173 of the Acts of 1919 is entitled ''An act establishing and fixing the salaries and fees of the county officers for Lonoke County, Arkansas, and for other purposes.'' It is a very comprehensive act, and includes all the officers of that county, and we think its obvious purpose was to place all these officers on a salary, which should be paid them in full compensation for all services they might render by virtue of their respective offices, and to require them to collect the fees fixed by law for their official services, and to pay these fees into the county general revenue fund.

Section 1 of this act fixes the salary of the county and probate judge. Section 2 fixes the salary of the county and probate clerk.

Section 3 reads as follows: "That the salary of the clerk of the circuit and chancery court and ex-officio recorder of Lonoke County shall be the sum of $4,000 per year; provided, that the fees, emoluments and commissions of said office amount to the sum of $4,000 per year."

Section 4 and 5 fix the fees of the sheriff and collector; § 6 those of the treasurer; and § 7 the fees of the assessor.

Section 8 reads as follows: "That it shall be the duty of all officials herein named, whose salaries are contingent upon the collection of fees, to employ such clerical help as will promptly expedite the transaction of the business of their respective offices, and to pay for said clerical assistance out of the salaries herein allowed them."

Sections 9, 10 and 11 fix the fees of the county superintendent of public schools, the surveyor, and the coroner, respectively.

Section 12 provides that it shall be the duty of the clerk of the circuit court and ex-officio recorder, and of the other officers there named, "to charge and collect the same fees and commissions as are now, or may hereafter be, allowed by law, and they shall each, on the first day of each quarterly term of the county court held in Lonoke County, file a true report in said court, showing the amount of all fees, emoluments and commissions collected by them respectively, up to and including the last day of the preceding quarter, and they shall each make settlement with the said court by paying all amounts collected by them during the preceding quarter, in excess of the salary and fees herein allowed, into the county treasury, and shall file the treasurer's receipt therefor as a voucher in said settlement, and in such settlement said officers shall be chargeable with and liable for all fees and commissions that it was the duty of said officers to collect, and that said officers shall be

allowed to retain their salaries out of the fees, emoluments and commissions collected by them.''

By § 13 it is made the duty of the various county officers to pay over to the county treasurer all funds received in excess of the salaries fixed by the act, and it is made the duty of the county court to examine the reports of these officers and to approve them if found correct.

Section 15 provides that, if these officers shall fail to keep the records, or make the reports, or fail to pay over the excess fees as required by the act, they shall be guilty of a misdemeanor, pay a fine, and be removed from office.

Section 16 requires the county judge to furnish all records and office supplies necessary, and § 17 provides that all excess fees shall be paid into the county general fund.

It was alleged that the clerk had been appointed commissioner by the chancery court in certain causes, and had been allowed fees of $35 for his services, which he had not included in his report of fees collected; and that Sexton, the deputy clerk, had been appointed commissioner by the chancellor in certain causes pending in the chancery court, and had been allowed fees as commissioner, and that no report had been made of these fees.

The court found that Swain had collected fees of $35 as commissioner, which he had not included in his report, and that he should be charged therewith, and should be required to pay the same into the county general fund.

The court further found that Sexton had been allowed fees as commissioner, which had not been included in the report of Swain, his principal, as clerk, and the court also found that the clerk was not required to account for or to pay over the fees allowed his deputy.

Sexton was not appointed commissioner as deputy clerk, and in no case in which he was appointed commissioner was he referred to as deputy clerk, and the chan-

cellor who made each of these appointments and who tried the case below made the following candid statement, which is incorporated in the record: "The salary paid to the circuit clerk was not adequate, in my opinion, at the time to permit him to receive a fair salary and pay a reasonable salary to such clerical help as he required, and there was some question as to whether, if the clerk was appointed, he would not have to account for these commissions."

Another statute which must be taken into account in considering the question presented for decision is § 1364, C. & M. Digest, which reads as follows: "The clerk of the circuit court, by virtue of his office, shall be master or commissioner of the circuit court, and shall have all the powers that now are, or may hereafter be, conferred by law on a master or commissioner in chancery, and shall receive for such services a compensation to be fixed by the court."

Section 1365, C. & M. Digest, provides that the judge may appoint any other person master or commissioner in special causes in said court.

These sections of the statute made the clerk *ex-officio* commissioner of the court, and contemplate that he shall be appointed in all cases where the service of a commissioner may be required, except in those cases where some special reason exists for not appointing him.

The fees of the commissioner are ordinarily fixed by the court in each particular case, and are largely dependent upon the duties and responsibility incident to the discharge of the appointment when duties other than the mere sale of property are involved, in which case the compensation is fixed by Acts of 1917, p. 1324; but we think it very clear that the General Assembly had this fact in mind in fixing the compensation of the circuit clerk. This officer is required to keep a record and to report all fees, emoluments and commissions collected by him, and these terms appear sufficiently comprehensive to include all compensation earned by the clerk in the discharge of the functions of his office. Indeed, we think

the "commissions" which the clerk is required to account for expressly include compensation allowed him as commissioner.

The clerk is made *ex officio* commissioner, and, this being true, the salary allowed him as clerk covers the entire compensation fixed by law for all duties performed by him as clerk or as commissioner *ex-officio*.

In the case of *Durden* v. *Sebastian County*, 73 Ark. 305, the salary act of that county was construed. The act fixed the salary of the clerk, but did not fix his salary as *ex-officio* recorder, and it was contended by the clerk that his salary as clerk did not include his *ex-officio* fees, and a similar contention was made as to other officers having *ex-officio* duties to perform. This court held, however, that the salary fixed for the circuit clerk as such contemplated that the amount named should be in full payment for all duties discharged by such officer, including his duties *ex-officio*, and a similar holding was there made as to the other officers having *ex-officio* duties to perform. The court there said: "It is clear that the Legislature intended, for the purpose of fixing salaries, at least, that these various officers (except the sheriff) having *ex-officio* duties, should receive but one salary for all the duties performed."

In the case of *Keeling* v. *Searcy County*, 88 Ark. 386, the clerk of the circuit court had taken the affidavits of certain persons who had entered government lands and had charged the fees which had been fixed by an act of Congress for that service. The clerk who took these affidavits was operating under a special salary act, which fixed his compensation for all services required of him by law as circuit clerk, and the court, in holding that the clerk should account for and be charged with the fees thus earned, said that the salary act "embraces every fee or emolument accruing to the clerk by reason of his official capacity, and allows the withholding of none. It includes every fee that was earned by him in his official capacity."

It will be observed, from the language of the act No. 173 quoted above, that the clerk is not given an absolute salary of $4,000, but he is required to collect and account for ''all fees, emoluments and commissions'' which he is allowed by law to charge, and out of the collections so made he may receive as his salary the sum of $4,000 if his collections equal that amount. The excess must be paid into the county general fund.

What we have said about the clerk is as equally applicable to his deputy. Section 8 of the act requires the officers there named to employ such clerical help as is necessary, and to pay the cost therefor out of the salaries allowed. The clerk is permitted by law to appoint a deputy, and Sexton was duly appointed as such, and was serving in that capacity at all times when he was appointed as commissioner. He was not appointed because there was a special reason for not appointing his principal, but for the reason, candidly avowed by the court which had made the various appointments, that the salary allowed by law was not sufficient to secure efficient service. This was, of course, an evasion of the law, and one which cannot be tolerated. It was not the function of the court to decide what compensation was necessary to secure efficient service. This was a legislative question, and one upon which the Legislature had expressed itself.

The clerk is, of course, responsible for the acts of his deputy—the act of the deputy is his act—and, while the deputy might perform many— and, conceivably, all— of the duties enjoined by law upon the clerk himself, his right to charge any compensation for the services performed is referable to his appointment as deputy, for his principal is acting through him. And in a case where, as here, the deputy is appointed to perform a service which his principal should have performed *ex-officio* (unless there was a special cause for appointing some other person), the fees allowed and collected should be accounted for as a part of the commissions which the clerk is required to report and account for. To hold

otherwise would defeat what the majority of the court regard as the obvious purpose of the Legislature, to fix the total salary of the circuit clerk at $4,000 per annum. And it is the settled rule of construction of statutes similar to the one under review that "where the provision of law fixing the compensation (of an officer) is not clear, it should be given the construction most favorable to the government." See chapter on Officers in 29 Cyc., p. 1426.

The entire act is attacked on the ground that it is unconstitutional, and, by a cross-appeal, the clerk seeks to recover the fees in excess of $4,000 per annum which he has paid into the county treasury. This contention is based on § 11 of article 16 of the Constitution, which provides that "no tax shall be levied except in pursuance of law, and every law imposing a tax shall state distinctly the object of the same; and no moneys arising from a tax levied for one purpose shall be used for any other purpose."

Of this contention but little need be said. Similar statutes have been uniformly upheld by this court. One of the early cases so holding is that of *Independence County* v. *Young,* 66 Ark. 30, and the act there upheld is not unlike the act here under review. It is true that, on the same day on which this decision was handed down, the case of *Gray* v. *Matheny,* 66 Ark. 36, was also decided. Both cases involved act No. 53 of the acts of 1895, page 66. The first of these Independence County cases involved the salary of the county clerk, and the act fixing his salary was upheld in its entirety. In the case of *Gray* v. *Matheny* the act was held unconstitutional in part as involving certain fees of the county treasurer derived from public taxation, but the court held that the obnoxious portion of the act might be stricken out and the act left complete without it. Here the salary of the treasurer is not involved, but, if it were, and if the portion of the act relating to the salary of the treasurer should be invalid, for the reason assigned in *Gray* v.

*Matheny* (which we do not decide), the remainder of the act would be left complete without it.

We conclude therefore that the act is constitutional, at least in so far as it relates to the clerk of the circuit court, and appellee is entitled to no relief on his cross-appeal.

It follows also, from what we have said, that the clerk was properly charged with the commissions which had been allowed him for his own services as such commissioner; and it also follows, from what we have said, that the clerk should be charged with and required to account for the commissions allowed his deputy, and the decree of the court below will be reversed, and the cause remanded with direction to enter a decree against both the clerk and the deputy for the commissions allowed and paid to the deputy.

### DISSENTING OPINION.

McCULLOCH, C. J.  I do not agree to the conclusion that the fees received by the clerk or his deputy as commissioner come within the statute fixing the salary of that officer.  Nor do I think that any of the cases cited in the opinion of the majority sustain that conclusion. It is true the statute makes the clerk *ex-officio* commissioner and master in chancery in the event that the court does not appoint some one to act in that capacity in a cause, but fees thus received are not "fees, emoluments or commissions of said office," and are derived by virtue of the order of the court permitting the clerk to serve as commissioner or master and fixing the fees.  In other words, such fees are received, not under the statute, but by virtue of the court's order.  This statute is directory, not mandatory, for it reposes in the chancery court discretion to determine whether or not the clerk shall serve as commissioner in a given case.  In this respect the case differs from those cases referred to where the fees were received *ex officio* by virtue of the Constitution or statute prescribing absolute duties and fixing the fees for discharging them.

Mr. Justice HART shares with me these views.