ESTES, Ad., etc., vs. MARTIN, Ad., etc.

1. JURISDICTION: *When acquired, continues, etc.*

When a court once rightfully acquires jurisdiction of a cause, it has the right to retain and dec de it.

Jurisdiction of the court depends upon the state of things at the time of the action brought; and, after vesting, it can not be ousted by subsequent events.

APPEAL from *Pulaski* Chancery Court.

Hon. J. R. EAKIN, Chancellor.

*B. D. Turner* and *U. M. Rose,* for appellant.

*Newton, contra.*

C. B. Moore, S. J.   The original bill in this case was brought in the Pulaski chancery court, to the October term, 1867, by Jasper M. Gonder against James A. Martin, as administrator *de bonis non* of the estate of James B. Johnson, and against his widow, then married again, and his heirs, and Albert Rust and D. J. Hartsook, as executor of Mary W. Cabell, and her heirs.

The bill alleges in substance that, in 1859, James B. Johnson agreed to sell to Gonder certain lands known as the Ben Oak plantation, in Desha county, Arkansas, for the sum of $75,000, one-third of which was to be paid in cash, and the balance in one and two years.   On the first of January, 1860, Johnson conveyed the lands to Gonder, receiving $25,000 in cash, and retaining a lien for the unpaid purchase money, which was evidenced by two notes for $25,000 each, due in one and two years.

Before the notes fell due, Gonder made large payments on them; after which he discovered that the lands were incumbered by a prior mortgage, given by Johnson to Albert Rust, to secure a debt of some $50,000, and which mortgage was recorded before he bought the land.

Immediately on discovering this, he applied to Johnson to remove the incumbrance, which he promised to do.

Rust had, in the meantime, assigned his mortgage to Mrs. Cabell, as security for a debt which he owed her. She had died, and Hartsook had qualified as her executor in Virginia, where she lived and died.

That in January, 1861, Johnson requested Gonder to pay the balance of the money due him, to enable him to extinguish the Rust mortgage, and after some negotiations between all the parties, it was agreed that the balance due from Gonder should be paid by him to Rust and Hartsook, upon which the mortgage should be released and canceled.   That in

April, 1861, he paid about $10,000 to Rust, which he agreed to credit on the mortgage debt; whereupon Rust agreed that if Gonder would pay him the balance due to Johnson—about $12,000—by January 1, 1862, he would release the mortgage. Still further negotiations seem to have been made, and on the nineteenth of April, 1861, Rust empowered his attorney to enter satisfaction of the mortgage if Gonder would pay the $12,000 by the twelfth of May, 1862. In pursuance of this agreement Gonder, on the third of May, 1862, sent the $12,000 to Hartsook, who acknowlodged its receipt, and according to directions applied it as a credit both on Johnson's debt to Rust, which Hartsook held by transfer, and upon Rust's debt to Mrs. Cabell's estate.

The bill further sets forth that in April, 1861, Johnson executed a second mortgage to Rust, on certain lands in Pulaski county, Arkansas, to secure the original debt to Rust, and which last mentioned mortgage was received by Rust in substitution of the mortgage on the lands in Desha county. Further, that other payments had been made by him (Gonder) to other parties, for Johnson, and that the various payments made, fully extinguished his indebtedness to him. That Johnson died in February, 1862; that the proper credits had never been entered on his notes, which were held by Martin, Johnson's administrator.

On the two grounds of the substitution of the Pulaski mortgage for the Desha mortgage, and payment, he prays, that the Desha mortgage be decreed to be satisfied—that his notes to Johnson be canceled and delivered up to him—and for general relief.

Hartsook, as well as Rust and Martin, answered the bill.

It will only be necessary to notice the answer of Hartsook, as Rust subsequently went into bankruptcy and ceased to have any interest in the suits, and his assignee was never made a party ; and Martin, the administrator of Johnson, withdrew from the defense of the suit about the same time.

And we remark here that, for the determination of the questions presented, we pass over and refrain from any mention of a great part of the pleadings of various parties drawn into the controversy from time to time in this protracted litigation, but whose interests in the suit have ceased, or are immaterial to the present inquiry.

Hartsook, in his answer, denies that he ever authorized the payment of the $10,000 to Rust by Gonder, or that he made any agreement for the release of the Desha mortgage, or that Rust had any power to make any such agreement for him ; denies that the mortgage on the Pulaski lands was accepted as a substitute for the mortgage on the Desha lands, but consented that it might be regarded as additional security for Rust's debt.

He makes his answer a cross-bill against Gonder and his co defendants in the original bill, and prays that both mortgages might be foreclosed.

This answer and cross bill was filed on the seventeenth of June, 1868. After the suit had been long pending, to-wit: on the ninth of May, 1876, Hartsook filed an amended and supplemental answer and cross-bill, making the occupants and subsequent purchasers of the Pulaski lands, parties, with a view to a more specific claim on them as cumulative security.

It turned out in the hearing, that these Pulaski lands, when Johnson mortgaged them, were subject to prior liens

for purchase money, and that the claim against the occupants and purchasers was barred by limitation.

Several interlocutory decretal orders, on demurrer to the cross-bill, and in reference to the complicated state of the pleadings, were made, in the progress of the suit, by the chancellor, which are not important to be noticed now by us.

Gonder and Rust have both died in the meantime, and after long delays, their legal representatives were brought in as parties in their stead.

So the suit dragged its weary length along until the month of June, 1877, when, after everybody who could be supposed to have any interest possible in the controversy had been brought into it, final decree was rendered.

The chancellor decreed that Martin, the administrator of Johnson, should bring into court, and deposit with the clerk, to be canceled, the notes of Gonder given for the purchase money of the Desha lands, and that they be adjudged to be fully paid and satisfied, and that the administrator was entitled to a credit for the same against his inventory in his settlement with the probate court, and that he or his successor as administrator, be perpetually enjoined from proceeding to collect said notes, or any part thereof.

Further, that as to all other matters, the original bill be dismissed for want of jurisdiction.

Further decreed, that so much of the cross-bill of Hartsook as seeks to foreclose the mortgage on the lands in Pulaski county be dismissed for want of equity, and that as to said lands in Pulaski, the decree be final as between Hartsook and the parties to the suit claiming the lands. Then the decree proceeds as follows: "It appearing that this court has no further jurisdiction of this cause to proceed therein, and to make any decree with regard to the

lands in Desha county involved in this suit, the said cross-bill of Hartsook is dismissed without prejudice of any of the rights, interests or defenses in or to the said lands in Desha county brought into controversy in this suit; but, with regard to said lands in Desha county, to stand as if this suit were never brought," etc.

To the opinion and rulings of the court in this decree, Hartsook excepted, and appealed. No exceptions are insisted on, however, by Hartsook or his counsel, to any part of the decree save the portion above quoted, by which Hartsook's cross-bill is dismissed for want of jurisdiction.

Since the transcript was filed in this court, Hartsook has died, and M. K. Estes, " as sheriff and administrator *de bonis non*" of Mrs. Cabell's estate, has, by proper proceedings, been substituted as the appellant herein.

The learned chancellor having decided (and we think correctly) that the prayer of the cross-bill concerning the Pulaski lands, or any relief whatever concerning them, should be denied upon the merits for want of equity, reached the conclusion, and so decreed, that the jurisdiction over the Desha lands must fail.

It must be borne in mind that this suit was instituted, and all the proceedings had, in the chancery court of Pulaski county. It was brought in 1867, before the adoption of the Code of Practice.

Our present inquiry is limited to the one question of jurisdiction.

The statute in force at the time of the institution of the suit, and under which the Pulaski chancery court was created, provided that the Pulaski chancery court should "possess the same jurisdiction and powers, and be governed by the same rules, as the circuit courts in this state in chancery cases." *Gould's Digest, ch. 28 (Art. 11), sec. 6.*

The general statute then in force, in regard to the venue of suits concerning real estate, provided that "suits in chancery concerning real estate may be instituted in any county in which any part of such real estate may be situated, or in which the defendant, or any of them, may reside."

See *Gould's Digest*, ch. *28* (*art. I*), *sec. 3.* Section 4, same chapter, provides that, "In other cases, suits in chancery shall be brought in the county in which the defendant may reside, or in the county in which the plaintiff, or one or all of several plaintiffs, resides; and the defendant, or one or all of several defendants, are found and served with process," etc.

These two sections, construed with the provisions of the section above cited, as to the powers and jurisdiction of the Pulaski chancery court, applied to that court equally with any circuit court in the state.

It is proper to remark, in passing, that these provisions as to the venue in real estate cases in chancery, are modified and materially changed by the Code—and this case was decided long after the Code went into use, and we suppose, was decided by the chancellor with reference to the rules of the Code.

Now, in the case at bar, the suit begun in the Pulaski chancery court by Gonder, related primarily and chiefly, to the lands in Desha county; but the mortgage on the Pulaski lands is referred to distinctly in the original bill of Gonder, and the fact stated and insisted on, that Rust had agreed to accept it in substitution of the mortgage on the Desha lands.

Hartsook, in his answer and cross-bill, lays hold more distinctly and emphatically, of the Pulaski county mortgage, and contends that it was given as cumulative secu-

rity, and asks for its foreclosure as well as of the Desha mortgage.

Both Gonder and Hartsook refer to, and ask relief in good faith, as to the Pulaski mortgage, and there is no ground for the belief that there was any fiction, or pretense; intended by either or any of the parties in regard to it, so as to impose on the jurisdiction of the court.

The suit then clearly "concerned" real estate, situated in Pulaski county, and the jurisdiction attached by the bringing of the suit and the filing of Hartsook's cross-bill, both as to the lands in Pulaski and in Desha counties. There is no question but that if the facts had warranted a foreclosure of the mortgage, and the relief asked as to the Pulaski lands, the court below could and would have gone on and decided the merits of the case as to the Desha lands.

That this could be done in such a case, and was contemplated by the framers of the statute, is clear from the twenty-second section of the twenty-eighth chapter, Gould's Digest, in which it is provided as follows :

" When, under the provisions of this act, any decree or judgment shall be made or rendered in the courts in Pulaski county against persons or property not within its territorial jurisdiction, an authenticated transcript of the entry made in the judgment docket as required by law, shall be immediately transmitted to the clerk in the proper county where the defendant may reside or have real estate, or where the real estate sought to be affected by the decree or judgment is situated; and the clerk receiving such transcript shall at once file for record, and shall record the same upon his judgment docket; and such judgment or decree shall be a lien upon real estate in the

27

county where the transcript is filed, as if the same had been made or rendered in that county," etc.

Moreover, part of the defendants to the original bill resided in Pulaski county—Rust and Martin, Johnson's administrator, and the administration of Johnson's estate, were in that county. This fact alone, had there been no real estate in Pulaski county to be affected in the suit, would, under the law as it then was, have given jurisdiction to the Pulaski chancery court.

Hartsook did not originally seek that forum, but was brought there in this suit by due and regular process, and saw fit, as he had the right, to make his answer a cross-bill, that all his rights or supposed rights touching the controversy might be settled in and by that suit.

Gonder would have had no right to dismiss his bill after the filing of the cross-bill of Hartsook, if he had so desired.

See *Sale and Wife v. McLean et al., 29 Ark., p. 612, and cases cited.*

"In that case this court approved and reiterated the doctrine as laid down in the case of *Cockrell v. Warner and Wife, 14 Ark.;* that when a defendant filed a cross-bill founded on a matter clearly cognizable in equity, the cross-bill supplies any defect in jurisdiction, if any existed, and placed the court in possession of the whole cause, and imposed the duty of granting relief to the party entitled to it—the original and the cross-bill being but one cause."

We conclude then that the jurisdiction clearly and rightly attached both on the ground of the suit "concerning" real estate in the county of the forum, and the residence of some of the defendants being in that county.

The jurisdiction having once attached, was it competent or possible that it could be ousted or lost in the progress of the suit? We think not, and can not concur with the learned chancellor, that when the cross-bill of Hartsook failed as to the relief sought against the Pulaski land, the jurisdiction failed as to the Desha land.

It is the universal rule, so far as we know, in the courts of the various states, and in the United States courts, that where a court once rightfully acquires jurisdiction of a cause, it has the right to retain and decide. See *Price v. State Bank, 14 Ark., 50; Heilman v. Martin, 2 Ark., 168; Robertson v. Thompson, 3 Ind., 190; Morgan v. Morgan, 2 Wheat., 290.*

In the case last cited, Chief Justice Marshall uses this language: " It is quite clear that the jurisdiction of the court depends upon the state of things at the time of the action brought, and, after vesting, it can not be ousted by subsequent events."

As to the merits of the case made as to the Desha lands, in Hartsook's cross-bill, we decide nothing, as no decree was rendered in the court below touching that part of the controversy.

Let the decree as to all other matters be affirmed, and for the error in dismissing Hartsook's cross-bill, let the case be reversed and remanded to the Pulaski chancery court, with directions to hear and determine the matters arising under the same, not already decided.

Hon. J. R. Eakin, J., did not sit in this case.