COUNTY BOARD OF EDUCATION *v.* AUSTIN.

Opinion delivered June 29, 1925.

1. EQUITY—DIVERSION OF SCHOOL FUNDS—JURISDICTION.—The chancery court has jurisdiction to restrain county officers from appropriating or using the school funds in their hands for any other purpose than the support of schools.

2. SCHOOLS AND SCHOOL DISTRICTS—DIVERSION OF SCHOOL FUNDS.—Special Acts 1919, p. 294, § 17, is in conflict with art. 14, § 3, and art. 16, § 11, of the Constitution, in so far as it requires the proportionate excess of fees from the school fund over the salaries of the treasurer and collector of Lonoke County to be covered into the county general fund, instead of into the school fund.

3. SCHOOLS AND SCHOOL DISTRICTS.—In determining the excess of fees and commissions of the county collector and county treasurer of Lonoke County, under Special Acts 1919, p. 294, the county court should charge to the school fund the proportion which the school tax collected bears to the total amount of taxes collected for the year; but in making this apportionment the court should not consider the funds collected on special improvement district assessments, such assessments not being taxes within the meaning of the Constitution.

4. CONSTITUTIONAL LAW—PARTIAL INVALIDITY OF ACT.—Section 17 of Acts 1919, p. 294, being unconstitutional, may be stricken out without impairing the remainder of the act, which remains complete in itself and capable of being executed in accordance with the apparent legislative intent.

Appeal from Lonoke Chancery Court; *John E. Martineau,* Chancellor; reversed.

*Trimble & Trimble,* for appellants.

*W. J. Waggoner* and *Chas A. Walls,* for appellees.

WOOD, J.   Act 173 of the Special Acts of 1919, page 294, is an act entitled ''An act establishing and fixing the salaries and fees of the county officers for Lonoke County, Arkansas, and for other purposes.'' The first eleven sections of the act fix the salaries and fees of the county officers. The 12th section provides that the sheriff and collector and other officers designated therein shall charge and collect the same fees and commissions as are now, or may hereafter be, allowed by law, and shall make a true report and settlement on

the first day of the quarterly term of the Lonoke County Court, paying all fees, emoluments and commissions collected by them, or which they should have collected during the preceding quarter in excess of their respective salaries and fees allowed them, into the county treasury, after deducting the amounts of their respective salaries.

Section 13 of the act requires that the officers designated shall, at each and every settlement, pay over to the treasury the funds received by them in excess of their salaries, etc.

Section 14 provides that each of the officers designated shall keep a well bound book showing the amount of fees, emoluments and commissions earned and expended and received by them, etc.

Section 15 makes the failure on the part of the officers designated to comply with the requirements of the act a misdemeanor and prescribes the proceeding and punishment against those found to be delinquent.

Section 16 provides that the county judge shall furnish the salaried officers of the county with records, stamps, stationery and equipment necessary for the proper conduct of the offices; the expense to be paid out of the county general fund.

Section 17 is as follows: "That all money paid into the treasury arising from fees, emoluments and commissions, collected by the county officers under the provisions of this act, shall be paid into the county general fund."

Section 18 fixes the compensation for grand and petit jurors during the years 1919 and 1920.

This action was instituted in the chancery court of Lonoke County by the county board of education of Lonoke County and one Davis, a citizen and taxpayer, against the county judge, treasurer and collector. Plaintiffs set out the provisions of the act as above set forth and alleged in substance that the collector had collected during the years 1919 to 1923, inclusive, the sum of $37,723.72 in fees, emoluments and commissions, of

which the sum of $15,722.76 was a school fund; that the *pro rata* share due by the school fund to the collector's salary amounted to $8,320, leaving a balance due the school fund in the hands of the county treasurer the sum of $7,402; that the treasurer had collected in fees and commissions for the years 1919 to 1923, inclusive, the sum of $27,825.98 of which $16,219.90 were school funds; that the *pro rata* share due by the school fund to the salary of the treasurer was $6,441.26, leaving a balance due in the hands of the treasurer after paying his salary the sum of $9,571.64 belonging to the school fund. Attached to the complaint were exhibits showing the amounts that it was alleged should be paid to the school fund after the payment of the treasurer's and collector's salaries in the sum of $16,974.40.

It was alleged in the complaint that section 17 of act 173, *supra,* is unconstitutional and void; that it was the duty of the board of education to apportion all school funds as provided by law in conformity with the regulations of the said board, and to place to the credit of the common school fund of the county all school funds in the county treasury, to be apportioned among the school districts of the county. It was alleged that the taxes of 1923 were sufficient to cover and pay the illegal exactions and overplus due the said school fund for the years 1919-1923, inclusive, as shown by the settlements made and exhibited with the complaint; that the bulk of the taxes for 1924 would be paid into the treasurer's office to the credit of the general fund as heretofore, and all commissions earned by the collector and treasurer in excess of their salaries, including the school funds, would be passed to the credit of the county general fund.

The prayer of the complaint was that the county judge be permanently restrained from ordering the treasurer to transmit the school funds in his hands to the credit of the county general fund, and that, upon final hearing, the treasurer be directed to hold the school funds in his hands for apportionment by the county board of

education among the school districts of the county, and that a master be appointed to state an account of the amount due the school fund by the county general fund for the years 1919-1923, inclusive.

The answer of the officers, by its admissions and denials, raises the issue as to the constitutionality of act 173 of the Acts of 1919. The answer states that, under the terms of the act requiring them to pay into the county general fund all fees, emoluments and commissions collected by them in excess of their salaries, they had complied with the act by paying such funds into the county general fund; that they had made settlements with the county court in accordance with the statements, which they filed and made exhibits to their answer, which exhibits had been approved by the county court, and that there was no liability on their part. It was alleged in the answer that the county judge, if act 173 is finally adjudged unconstitutional or partly so, will appropriate such sums as may be finally adjudged to be due the school fund, if any, for the purpose of restoring said funds to the school fund of Lonoke County. The county judge set up that the chancery court had no jurisdiction to enter any sum whatever as a judgment against the county. He further alleged that he had directed the county treasurer and collector to hold intact the fees and commissions collected by them on the school fund. The officers joined in the prayer that the court fix the basis for the distribution of the funds now enjoined in the hands of the county collector and county treasurer.

The trial court, upon the pleadings and exhibits thereto, found that act 173, *supra,* was constitutional and dissolved the temporary restraining order, and ordered that all fees collected by the collector and treasurer in excess of their respective salaries be paid into the county general fund as provided by that act. The court thereupon entered a decree dismissing the complaint for want of equity, from which is this appeal.

1. The chancery court had jurisdiction to restrain the county officers from appropriating or using the

school funds in their hands for any other purpose than the support of schools. See Amendment No. 9, Constitution of 1874, Crawford & Moses' Digest, p. 133; also article 16, § 11, Constitution. The complaint, in substance, alleged that there had been a diversion of school funds by the county judge, the collector, and the treasurer for the years 1919 to 1923, inclusive, and that, unless these officers were enjoined, there would be a diversion also of the school funds in their hands for the year 1924 by the payment of school funds in their hands in excess of their salaries into the county general fund where the same would be used for general county expenses, such as public improvements, etc, and not specifically for school purposes; that the officers named claimed that they were authorized to handle the school funds in the manner indicated by the provisions of act 173 of the Special Acts of 1919, which are set forth in the complaint, and that so much of said act as provides for the placing of all fees, emoluments, and commissions, received by these officers into the general county fund to be used for general county purposes was unconstitutional and void.

The answer does not deny these allegations, but avers that the school funds in the hands of the collector and treasurer of the county for the years named in excess of their salaries had been passed to the credit of the county general fund under authority of the above act, and that the county judge had treated the funds as county general funds and directed their expenditure for the years mentioned for general county purposes under the authority of such act, and the pleadings show that the officers will treat the school funds for the year 1924 in the same manner.

Thus the issue raised by the pleadings is within the jurisdiction of the chancery court, and the question to be determined is whether or not § 17 of the act violates the Constitution.

2.    In the recent case of *State use of Lonoke County* v. *Swaim,* 167 Ark. 225, we had under review this same act and particularly § 3 thereof, which fixes the salary of

the circuit clerk. It was contended that § 17 was unconstitutional and void and rendered the whole act void. We pretermitted a decision of the question in that case, saying, "Here the salary of the treasurer is not involved, but, if it were, and if the portion of the act relating to the salary of the treasurer should be invalid, for the reason assigned in *Gray* v. *Matheny* (which we do not decide), the remainder of the act would be left complete without it."

In *Gray* v. *Matheny*, 66 Ark. 36, the court had under consideration § 3 of the salary act fixing the salary of the treasurer of Independence County. Section 7 of that act provides as follows: "All money paid into the treasury arising from said fees and commissions in Independence County, Arkansas, shall be covered into the general revenue fund of the county." Speaking of this section, in that case, we said: "He (the treasurer) receives fees or commissions on funds paid into the treasury derived from taxation. Section 11, art. 16, of the Constitution of Arkansas provides: * * * 'and no moneys arising from a tax levied for one purpose shall be used for any other purpose.' Section 4 of the special act under consideration requires the officers to pay over in kind the funds received by them in excess of their salaries. We are of the opinion that § 7 of the act is obnoxious to the above provision of the Constitution, in so far as it requires the excess over the treasurer's salary of eight hundred dollars, to be covered into the general revenue fund of the county. The excess of funds in the hands of the treasurer over his salary belongs to the county, and goes to the respective funds for which the tax was levied and collected. This provision, however, as it relates to the treasurer, may be stricken out, and the act be left complete without it."

Section 17 of act 173, *supra,* now under consideration, is similar in language to and in legal purport is precisely the same as, § 7 of the act construed in *Gray* v. *Matheny,* above. Counsel for appellees contend that the decision in *Gray* v. *Matheny* was wrong, and that it

was unnecessary to hold in that case that § 7 of the act there under review was unconstitutional and void. Counsel are correct in saying that it was unnecessary to the decision of that case to hold that § 7 was unconstitutional and void. We might have passed over a decision on the constitutionality of that section, the same as we did in the recent case of *State use of Lonoke County* v. *Swaim, supra.* However, the language used by us in *Gray* v. *Matheny, supra,* was germane to the construction of the act, although not absolutely necessary to the decision. We cannot concur with learned counsel in the view that the court's construction of section 7 in *Gray* v. *Matheny, supra,* was wrong. On the contrary, we are convinced that the court's construction of § 7 in that case was entirely correct. Section 7 in that case and § 17 in the case at bar are in palpable violation of § 11, article 16, and also § 3, article 14, of the Constitution, as amended by Amendment No. 9 thereto.

Section 17 is obnoxious to the above provisions of the Constitution because under it all the fees, emoluments and commissions earned in the collection and receipt of funds derived from taxation shall be paid into the county general fund, whereas the commissions earned in the collection and receipt of taxes which have been levied and collected for a particular purpose, when paid into the treasury under this law, should go to the credit of the particular fund, and be used for the particular purpose, for which the taxes were levied and collected. Before the present law was passed the commissions allowed for the collection and handling of school funds raised by taxation were paid out of such funds. Indeed, they are a part of such funds. See §§ 4595 and 10071 of Crawford & Moses' Digest. The fund raised by taxes not exceeding five mills on the dollar for all county purposes, or the "county general fund," is what its name imports—a fund raised to meet the expenses incident to county government—a county general fund, and is altogether a different fund from the school fund of the county. See § 9863 C. & M. Digest; 15 C. J. p. 583, §

284. The Legislature is wholly without power to command that fees, emoluments, and commissions, allowed for the collection and handling of school funds by the county officers, be covered into the county general fund. 24 R. C. L. p. 592, §§ 45-48. See also *Hartford* v. *West Hartford School Dist.,* 102 Ark. 261; *Cost* v. *Shenault,* 113 Ark. 19; *Dickinson* v. *Edmonson,* 120 Ark. 80. Such fees, emoluments and commissions, when paid into the treasury should go to the credit of the school fund to be used for school purposes and no other. Section 17 is unconstitutional because it plainly authorizes a diversion of the school funds into the county general fund, where it could be used for other than school purposes.

In the case of *Dickinson* v. *Edmonson, supra,* we quoted at page 89, from the Supreme Court of Washington in *School District No. 20 of Spokane County* v. *Bryan,* 51 Wash. 498, as follows: "To take from the one and give to the other by indirect methods that which was designed for a special purpose would defeat the whole scheme of the law, and open a way for the ultimate transposition of funds held under a most sacred trust. Courts have been zealous in protecting the money set apart for the maintenance of the free schools of the country. They have turned a deaf ear to every enticement, and frowned upon every attempt, however subtle, to evade the Constitution." The above language is exceedingly apposite here. "Constitutional requirements as to the preservation and inviolability of the public school funds must be observed by State legislatures, or their enactments will be invalid." 35 Cyc. p. 826. Certainly the school funds should not be made to bear more than its just proportion of the salaries of the collector and treasurer. This fund, however, should be required to bear its just proportion of these salaries. To so require would not be a diversion of such fund because the school fund must be collected and paid into the treasury and must be handled and disbursed after it is covered into the treasury. So the act of the officers in col-

lecting and handling the school fund is germane to the purpose for which it is raised.

Therefore, the county court, in determining the excess of commissions to be credited to the school fund, should apportion or prorate the amount to be paid by the school fund toward the salaries of the collector and treasurer in the proportion that the total amount of the school fund collected and disbursed by these officers for one year bears to the total amount of all funds raised by taxation for that year; that is, by taxes for county, State, municipal, school, road and all general taxes, for these come within the purview of article 2, § 23 and article 14, § 3, and article 16, § 11 of the Constitution, 1874. In making the apportionment the court cannot take into consideration commissions on funds collected or raised on special improvement district assessments, for these are not taxes within the meaning of the provisions of the Constitution. *Cribbs* v. *Benedict,* 64 Ark. 555, and cases there cited at p. 562.

It follows that § 17 of act 173, *supra,* is unconstitutional and void, in so far as it authorizes and directs commissions on school funds earned and paid into the treasury to be covered into the county general fund. This part of the act may be stricken out without impairing the remainder of the act, because that which remains is complete in itself and capable of being executed in accordance with the apparent legislative intent. Cooley on Constitutional Limitations, §§ 246-248; *Nixon* v. *Allen,* 150 Ark. 244, and cases there cited. The chancery court has no jurisdiction primarily to apportion and distribute school funds in the county treasury. This jurisdiction is lodged by the Constitution and laws in other agencies and tribunals. See chapter 158, C. & M. Digest. The chancery court does have jurisdiction, however, as we have stated, to prevent a diversion of school funds to other purposes.

The trial court erred in dismissing the appellants' complaint for want of equity. It should have, instead,

granted the prayer of appellants' complaint and entered an order directing the treasurer to pass to the credit of the school funds all fees, emoluments and commissions allowed by law and earned by the collector in the collection and by the treasurer in the receipt and handling of the school funds, after deducting the proportionate share of the salaries due such officers by the school funds under the rule of apportionment above indicated. The court should have entered an order restraining the treasurer from covering the funds derived from such source, and as above ascertained, into the county general fund. The decree is therefore reversed, and the cause remanded for such further proceedings as may be necessary according to law and not inconsistent with this opinion.

McCULLOCH, C. J., and SMITH, J., dissenting.

McCULLOCH, C. J., (dissenting). I am unable to bring myself in accord with the views of the majority in holding that the requirement for the payment into the county treasury, for the benefit of the general revenue fund, of the statutory fees for collecting the school fund is unconstitutional as a diversion of funds, within the prohibition of § 11, art. 16, of the Constitution.

The general statutes of the State provide for the payment to the tax collector and county treasurer of commissions out of the school funds, as well as other public funds, for the collection and handling of taxes. Crawford & Moses' Digest, § § 4594, 10071. The validity of those sections has never been questioned, though it has always been the practice under those statutes for the school fund to share its proportion of the expenses of collecting and handling the funds. There is no reason why the school fund should not bear those expenses, the same as any other fund. Now, if those statutes were valid at the time they were enacted, they are not affected by the statute fixing the salaries of officers in Lonoke County. If the percentage of commissions prescribed by the statutes was reasonable at that time, it has not been rendered unreasonable, so far as it relates to Lonoke

County, by the subsequent special statute providing for the officers of that county to receive definite salaries to be paid out of the statutory commissions turned in to the treasurer. The general statute constitutes a legis-lative determination that the commissions prescribed therein are reasonable and just contributions from the various funds towards the expenses of collecting and handling those funds. There are other expenses to which the county is subjected in the collection and hand-ling of the taxes other than the commissions of the col-lector and treasurer. Hence the provision for putting the officers on salaries and turning the fees into the treasury should be upheld as a determination that the original commissions prescribed by the general statutes are reasonable, and that they should be exacted to cover the whole expenses incurred by the county in paying salaries and other things in the collection and handling of the taxes. Absolute accuracy in adjusting the burdens of the expense of collecting and handling public funds is scarcely attainable, hence the determination of the law-makers should not be disturbed in making those ad-justments.

The constitutional restriction that ''no moneys re-ceived from a tax levied for one purpose shall be used for any other purpose'' (art. 16, § 11) was not intended to hamper the Legislature in prescribing the means whereby the public funds should be collected and handled. The general statutes prescribing the commissions in Lonoke County, which, under the special statutes in oper-ation in Lonoke County, are paid into the general reve-nue funds, do not constitute a diversion of funds within the meaning of the constitutional provision just referred to, for, as we have already seen, this is merely a method providing for the payment of expenses of collecting and handling the funds. The fact that the amount of com-missions thus separated from the funds may be in excess of the salaries of the officers does not put the provision in conflict with the constitutional inhibition against using

funds for one purpose which arises from taxes levied for another purpose.

The majority rely upon the opinion of this court in *Gray* v. *Matheny,* 66 Ark. 36, but I think that all that was said in the opinion on the subject is clearly *dictum,* and is not binding upon us except to the extent of its persuasiveness. There were two of those cases on this subject decided on the same day, *Independence County* v. *Young,* 66 Ark. 30, and *Gray* v. *Matheny, supra.* The first case involved the validity of the statute fixing the salary of the county clerk of Independence County, and the other involved the validity of the same statute fixing the salary of the county treasurer of that county. In both cases it was contended that the statute fixed the salaries of those two officers so low that it practically abolished the offices, and that, for that reason it was unconstitutional. This court refused to accept that view, and held that the act was valid. The statute contained a provision similar to the one now before us to the effect that the fees provided under general statutes should be collected and turned into the treasurer, and the salaries paid out of the funds thus raised; and in *Gray* v. *Matheny* it was decided that that portion of the statute which fixed the salary of the treasurer was separable from the other parts of the statute and was valid, even though another part was invalid. It was therefore unnecessary for the court to decide whether the part of the statute disposing of the surplus fees was valid or not. That case related to a controversy between the county and the treasurer concerning the amount of his fees, and the question of misappropriation of school funds was in no wise involved. I think that the *dictum* in *Gray* v. *Matheny* was erroneous, and I am unwilling to follow it, but, in the present case, I believe that the statute is valid. I am further of the opinion that, if the statute is invalid, to the extent indicated in the majority opinion, the apportionment of the expenses should, in accordance with the contention of appellant, be made upon the basis of all

commissions collected from all sources, including improvement taxes as well as all other funds. If the Legislature has the power to provide for the payment out of any funds collected, including improvement district taxes, of the expenses of collecting and handling those funds, then all the funds collected should be taken into consideration in apportioning the expenses. I fail to see any reason why improvement taxes should be excluded from that consideration, if the Legislature has the power to provide for the payment of the collector's fees out of those funds when collected. It is true that assessments in local improvement districts are not taxes within the meaning of the Constitution, but that affords no reason why the commission on the collection thereof should not be considered in the apportionment of the expenses among the various funds collected. In other words, there is no distinction as to the character of funds, so far as concerns the basis of the apportionment.

SMITH, J., concurs.