STRAWN *v.* CAMPBELL, COUNTY JUDGE.

5-990                                                    291 S. W. 2d 508

Opinion delivered May 28, 1956.

[Substituted opinion delivered July 2, 1956.]

450

LEE SEAMSTER, Chief Justice. The appellants, as taxpayers, filed this suit in the Pulaski Chancery Court, First Division, to enjoin the County Judge and others from proceeding under the provisions of Act 351 of the 1949 Acts of the General Assembly of Arkansas. The appellees filed a general demurrer to the complaint and it was sustained by the trial court. The appellants have appealed.

On October 3, 1955, the assessor of Pulaski County, a majority of the members of the Equalization Board of Pulaski County, a majority of the members of each municipal council within Pulaski County, and a majority of the members of each school board within Pulaski County, acting under the provisions of said Act 351, petitioned the Pulaski County Court to employ professional appraisers for the purpose of appraising all real and personal property within the county, said appraisal to be furnished to the tax assessor as an aid in assessing said property for ad valorem taxes.

On November 10, 1955, a hearing was had on said petition, after publication of a notice of said hearing as

provided by the act, at which time the County Court found that there was a need for the employment of professional appraisers to appraise all real and personal property within Pulaski County, and that the interest and welfare of the public would be promoted thereby. It was ordered that three property owners of Pulaski County named in the court's order, enter into negotiations for the employment of qualified appraisers to appraise all real and personal property within the county for a sum certain, the terms and conditions of the contract to be stated in writing, signed by the contracting parties, and submitted to the County Court for final approval. The aforesaid order was amended by an order of December 29, 1955, designated as an order nunc pro tunc, in which the County Court directed the persons named in the original order to negotiate a contract for the appraisal of real estate only.

In compliance with the order of the County Court, the property owners named in said order proceeded to negotiate a contract with E. T. Wilkins and Associates providing for the appraisal of all the real estate in Pulaski County, which contract was approved by the County Court on February 2, 1956.

For reversal, the appellants cite the following points: (1) Act 351 of the Acts of the General Assembly of 1949 is in contravention of Section 28, Article 7, of the State Constitution, in that it inhibits the expenditure of county taxes by the County Court unless approved by a majority of the members of the city councils and a majority of the members of the school boards in the area affected; (2) said Act is in the contravention of Amendment 40 of the State Constitution; in that it authorizes the use of school funds for purposes other than "the maintenance of schools, the erection and equipment of school buildings and the retirement of existing indebtedness" as limited in said Constitutional Amendment; (3) the order of the County Court is in excess of the court's jurisdiction in that the petition asked for the appraisal of "real and personal" property, whereas the court ordered the appraisal of real property only;

and, (4) said Act 351 constitutes an unlawful delegation of authority.

In regard to appellants' first point, Act 351 does not compel the County Court to employ professional appraisers, nor does it prevent the court from employing professional appraisers. The exclusive original jurisdiction remains in the court to determine whether to employ said appraisers. This act simply sets up the machinery whereby a petition may be addressed to the discretion of the County Court to employ appraisers. If the court finds that there is a real need to employ professional appraisers, then it appoints a committee of property owners to negotiate a contract. That contract is not effective until it is approved by the County Court. If for any reason at all the court is dissatisfied with the terms of the contract, it may refuse to approve it.

The respective taxing units are required to approve the contract due to the fact that they share proportionately the expenses of the appraisal. The contract is without effect until approved by the County Court; since under the Constitution and laws the County Court has exclusive original jurisdiction in all matters relating to county taxes and the disbursement of money for county purposes. If the taxing units refuse to approve the contract, the County Court could employ the same appraisers. The only difference is that under these circumstances the county would have to pay the costs of the appraisal without contribution by the several taxing units. Section 28, Article 7, Constitution; Sec. 22-601 Ark. Stats., 1947; *State Use of Prairie County* v. *E. F. Leathem and Company*, 170 Ark. 1004, 282 S. W. 367.

Section 5 of the Act provides:

"Claims for costs of publication incurred and for appraisal services in accordance with the terms of the appraisal contract shall be filed with the clerk of the court as other claims against the county are filed, and the county court shall promptly examine each such claim, and if it finds same to be correct, enter an order directing the county clerk to issue a warrant upon the

county treasury, payable from the general fund of the county, for the amount so found to be due.''

It can be readily seen that the County Court has exclusive jurisdiction over the expenditure of county funds in this instance.

The appellants' second contention is to the effect that Act 351 contravenes Amendment No. 40 to the State Constitution in that the expenditure here contemplated would not be for (1) maintenance of schools, (2) the erection and equipment of school buildings, nor (3) the retirement of existing indebtedness. This amendment does not pertain to the assessment of property, nor does it prohibit the payment out of school funds such taxing unit's pro rata share of the cost of assessing and collecting taxes.

Section 5, Article 16 of the State Constitution provides ''All property subject to taxation shall be taxed according to its value, that value to be ascertained in such manner as the General Assembly shall direct, making the same equal and uniform throughout the State. No one species of property from which a tax may be collected shall be taxed higher than another.''

Section 46, Article 7 of the State Constitution provides that: ''The qualified electors of each county shall elect one sheriff, who shall be ex-officio collector of taxes, unless otherwise provided by law; one assessor, one coroner, one treasurer, who shall be ex-officio treasurer of the common school fund of the county, and one county surveyor, for the term of two years, with such duties as are now or may be prescribed by law. Provided, that no per centum shall ever be paid to assessors upon the valuation or assessment of property by them.''

The General Assembly has provided by Section 12-806, Ark. Stats. Anno., 1947, that: ''It is hereby declared to be the policy of the state and local governments of Arkansas that from and after July 1, 1947, the State and every county, municipality, school district and other taxing unit, excepting only special improvement dis-

tricts to which the county assessor is not required by law to render service, receiving ad valorem or other tax funds collected by county collectors shall contribute funds for the payment of the salaries and the necessary expenses incurred in the performance of their official duties, of the county assessors and their deputies.

"For the purpose of carrying out the foregoing policy, the amount so to be contributed annually by each of said taxing units shall be in the proportion that the total of such taxes collected for the benefit of each such taxing unit bears to the total of such taxes collected for the benefit of all such taxing units. Provided, however, that the pro rata contribution of such salaries and expenses of any such taxing unit which receives taxes collected for the purpose of meeting debt service requirements of its issued and outstanding bonds shall be charged to and paid out of the said taxing unit's general fund, and not to or out of any special fund it may maintain for such purpose, nor in such other manner as will diminish the amount necessary to meet such debt service requirements."

The General Assembly has also provided by law that the several taxing units shall pay their pro rata share of the costs of the salaries of the county collectors and the county treasurers. In the case of *Terry, County Judge* v. *Thornton,* 207 Ark. 1019, 183 S. W. 2d 787, this court said, "Certainly the school fund should not be made to bear more than its just proportion of the salaries of the Collector and Treasurer" — thus requiring the schools, along with the other various taxing units, to pay their just proportion of the cost of collecting and disbursing tax funds. See also *County Board of Education* v. *Austin,* 169 Ark. 436, 276 S. W. 2.

The State Constitution clearly gives the General Assembly the authority to require the schools to pay their pro rata share of the costs of assessing property, a portion of which may be applied to the expenses of employing professional appraisers. This is a valid exercise of legislative power and is not prohibited by Amendment No. 40 to the State Constitution. The office of tax as-

sessor must form a part of any valuation scheme erected by the General Assembly, but the General Assembly may, from time to time, prescribe the duties of that office and adopt such methods as may be deemed expedient to ascertain the values of taxable property. See *Hutton v. King*, 134 Ark. 463, 205 S. W. 296.

Since the school district had assumed the obligation of paying its pro rata share of the cost of the appraisal, it was not improper for it to make an advancement to the Pulaski County General Fund, to be deducted from any amount found due the district to the Pulaski County General Fund in 1957.

The appellants next contend that the order of the County Court is in excess of the court's jurisdiction in that the petition asked for the appraisal of "real and personal" property, whereas the court ordered the appraisal of real property only. This point has no merit and has been settled by some of our earlier cases. *Evans v. Perciful*, 5 Ark. 424; *Estes v. Martin*, 34 Ark. 410. This court has held that once a court obtains jurisdiction of the parties and the subject matter, it has the right to decide every question arising in the case.

In the instant case, the appellants have made a collateral attack upon the order of the county court. A county court acting within the powers conferred by the Constitution and statutes is a court of superior jurisdiction, and, where by statute special powers have been conferred and such special powers exercised judicially, its judgment cannot be impeached collaterally except for want of jurisdiction or errors apparent on its face. *Stumpff v. Louann Provision Co.*, 173 Ark. 192, 292 S. W. 106; *Bragg v. Thompson*, 177 Ark. 870, 9 S. W. 2d 24; *State ex rel, Attorney General v. Kent*, and *State ex rel, Attorney General v. Wilson*, 181 Ark. 683, 27 S. W. 2d 106. In the instant case, the County Court had jurisdiction of the parties and the subject matter and the court's order is valid on its face, therefore it is good on collateral attack.

The appellants' last point is based on the contention that the provisions of Act 351 constitutes an unlawful delegation of authority. Section 1 of the act specifically provides that the appraisal shall be ''for the purpose of making such appraisal available to the county assessor as an aid to such assessor in making his appraisals or assessments for ad valorem tax purposes.'' This provision is not an unlawful delegation of authority — it can only make the appraisal available as an aid to the assessor. The assessor makes the final assessment under the act.

Finding no error, the decree is affirmed.

Justice GEORGE ROSE SMITH not participating.

Justice ED F. McFADDIN dissents.

ED. F. McFADDIN, Associate Justice (Dissenting). I respectfully dissent in this case because it is my studied conclusion that in affirming the Trial Court the majority has made mistakes both of omission and commission.

I. *Omission.* The majority—in considering the appeal only on the four points listed in the opinion—has omitted all mention of subsequent Legislative enactments that materially concern this matter of equalizing assessed values. Some of these Legislative enactments may — and I suspect, do—repeal the said Act 351 of 1949 here involved. At least, the majority should have mentioned the Acts, and decided whether any of them repealed Act No. 351 of 1949. Here are some of the Acts on the same general subject of increasing or equalizing assessed valuations: (a) Act. No. 10 of the Extraordinary Session of 1951 (involved in the case of *Campbell* v. *Little Rock School Dist.*, 222 Ark. 615, 262 S. W. 2d 267); (b) Act 371 of 1955; and (c) Act 153 of 1955. This last mentioned Act—No. 153 of 1955—provides in its caption, *inter alia*: ''An Act Providing for a Complete Appraisal and Assessment of All Property in this State that is Required by Law to Be Assessed By County Assessors: . . .'' Section 1 of the Act says, in part: ''There shall be a complete new appraisal and assess-

ment as of January 1, 1957, of all property in the State of Arkansas, both real and personal, that is required by law to be assessed by County Assessors.'' If this Act means what it says, then, as of January 1, 1957, all previous assessments will be discarded; and the assessment here involved can hardly be made effective *before* January 1, 1957. Certainly the majority opinion should have examined this Act 153 of 1955 to see if it repealed the Act 351 of 1949 here involved.

The Act 153 of 1955 is a comprehensive Act that seems to take up the entire matter of equalizing assessed valuations; and our cases hold, that when the Legislature takes up an entire subject and legislates at length on it then other laws on that subject are impliedly repealed. In *Louisiana Oil Ref. Co.* v. *Rainwater,* 183 Ark. 482, 37 S. W. 2d 96, this Court held that the provisions in the old corporation law (requiring the filing of annual statements with the County Clerk) were impliedly repealed by a 1927 Act which dealt with the subject of corporations generally, but which omitted any provision about the annual report. In other words, the old provisions were impliedly repealed by a new law which omitted such details. Here is what the Court said in that case:

''As above stated, the act of 1927 provides a new scheme or system for the organization and regulation of corporations. It takes up the whole subject-matter anew and sets up a new plan. It is in no sense amendatory to the old act, but it is a new enactment covering the same subject-matter. It runs through 40 pages of the printed acts, with 57 sections. As we said in *Cordell* v. *Kent,* 174 Ark. 503, 205 S. W. 404, cited with approval in *State ex rel Atty. General* v. *Standard Oil Co.,* 179 Ark. 280, 16 S. W. 2d 581: 'Where the Legislature takes up a whole subject anew, covering the whole ground, revising the whole subject-matter of a former statute, and evidently intending to enact a substitute, the old statute is repealed, although the new statute contains no express words to that effect', and further, even though the old statute contains provisions not covered in the new.''

It seems to me that in the case at bar the majority should have discussed this Act 153 of 1955 because, if Act 351 of 1949 is impliedly repealed by Act 153 of 1955, then that fact should have been stated in the majority opinion, even though neither side in this present litigation saw fit to raise the issue.

The failure of counsel to raise this question cannot excuse this Court, because, when the present opinion becomes final, every question that could have been raised—whether urged or not—is precluded from further consideration. In *McCarroll* v. *Farrar,* 199 Ark. 320, 134 S. W. 2d 561, this Court held, that where a citizen and taxpayer brings an action on behalf of himself and other taxpayers (just as is the situation in the case at bar), then such suit is a representative suit and every question that could have been raised in that suit— even though not raised—is barred in a subsequent suit.

In *McCarroll* v. *Farrar* there was the question of whether Act 310 of 1939 was unconstitutional because of certain omissions in the Legislative procedure.   There had been a former suit (*Caldarera* v. *McCarroll,* 198 Ark. 584, 129 S. W. 2d 615) challenging Act 310, but the question sought to be raised in the Farrar suit had not been raised in the Caldarera suit.   Nevertheless, this Court held that the Caldarera suit was *res judicata* against the claims that Farrar sought to raise, even though the questions had never been considered in the Caldarera suit. So here, in the case at bar, the question is the constitutionality and present validity of the Act No. 351 of 1949. The majority is holding that the Act is constitutional and valid and now in existence; and such holding will be *res judicata* even when some suit may arise involving Act 153 of 1955.   Thus the Court is ruling out of existence, *in advance of consideration,* any question about the validity and effect of Act 153 of 1955 on the Act 351 of 1949 here involved.

I most strenuously maintain that, in omitting any consideration of subsequent Legislative enactments on the Act 351 of 1949, the majority is guilty of the fault of

*omission.* This Court is not excused merely because counsel for the parties in this suit did not see fit to raise the question. At least, such is my humble opinion. If the Court did not want to pass on the question without briefs, we should have asked counsel to rebrief the matter, rather than to close our eyes to the question of the effect of subsequent legislation.

II. *Commission.* But, entirely apart from the fault of omission, there is the equally serious fault of *commission,* because the majority is holding in this case that a School District can lend school funds. The complaint alleged:

"8. The plaintiffs are informed and believe and, therefore, allege that the defendants, Dr. William G. Cooper, Jr., Mrs. Arthur E. McLain, Mrs. Edgar F. Dixon, R. A. Lile, Harold J. Engstrom, Jr., and Dr. Dale Alford, as Directors of Little Rock Special School District, have agreed to advance to the Pulaski County General Fund a sum of money prior to June 30, 1956, within the 1955-1956 fiscal year of the Little Rock Special School District, and a sum of money after July 1, 1956, within the 1956-1957 fiscal year of the Little Rock Special School District, to be applied on the sum of $310,000.00 provided for professional services in the contract for appraisal, and to be deducted from the amount found to be due from the Little Rock Special School District to the General Fund of Pulaski County in the year 1957, as provided in Act 351 of the Acts of the General Assembly of 1949. The said payments by the Little Rock Special School District will constitute a diversion of school funds in violation of Amendment 40 to the Constitution of the State of Arkansas."

The demurrer filed by the appellees admits that the Little Rock School District is to "advance school money to the Pulaski County General Fund to apply on the cost of this appraisal business, and is to be repaid when Pulaski County gets increased revenues from this re-appraisal. That is a straight loan by the Little Rock School District to the General Fund of Pulaski County. In the

oral argument before this Court, I asked the attorneys to cite me to some provision of law that allowed a school district to lend money; and, with becoming candor, the attorneys advised me that they could find no such law. If the Little Rock School District can lend any of its money to Pulaski County, then it can lend its money to any other corporation or individual. The money that the School District receives, either from taxes or any other source, is certainly a trust fund to be spent for school purposes and not to be loaned to a corporation or an individual. I cannot see how the majority can affirm this case in the face of a complaint that contained the allegations as herein quoted.

In the oral argument it was said that the School District was merely "advancing" the money to Pulaski County and was to be repaid. It is a mere quibble of words to say that the *"advance"* here alleged will not be a loan; because a loan is an *advance to be repaid.* Nor can the loan of the school funds to Pulaski County be defended by Section 6 of the Act 351 of 1949 here involved. That section says:

"Annually at the time of making the final settlement of taxes collected by the county tax collector, the funds of the one or more taxing units in which property has been appraised under the terms of this Act shall be charged with such unit's respective pro rata share of such appraisal and publication costs and the amounts so charged shall be credited to the general fund of the county."

That section means that the General Fund of Pulaski County shall be repaid—from the increased tax moneys collected—for the overhead expense that the County has been out, and thus satisfies the requirements of *Hutton* v. *King,* 134 Ark. 463, 205 S. W. 296, cited in the majority opinion. The Act clearly contemplates that the County shall bear the expense originally. But in the case at bar, the School District is to lend its money to the Pulaski County General Fund and then get the money back when, as, and if, the tax collector receives more

money from this assessment procedure than he would have received without the assessment procedure. I urge the majority to show me any law in this state that allows (a) a school district to lend money, or (b) a county to borrow money from a school district. Until such a law can be found, I submit that this Court should not affirm this case.

School funds are trust funds and cannot be diverted In 47 Am. Jur. 363, cases from this jurisdiction and many others are cited to sustain the following text:

"School funds are held to be trust funds for educational purposes which the courts will not permit to be diverted to other even though closely kindred uses, no matter how meritorious the project may appear to be in its practical, ethical, or sentimental aspects. Even the legislature, itself, the fountainhead of matters educational, cannot divert school funds to other uses."

I submit that the majority opinion in this case is allowing school funds to be diverted to pay county expenses. In the case of *Walls* v. *State Board of Education,* 195 Ark. 955, 116 S. W. 2d 354, this Court held that the school funds could not be diverted, even to the assistance of the State School for the Blind; and yet, in the case at bar, the majority is allowing the school funds of the Little Rock School District to be loaned to Pulaski County so that Pulaski County may hire some assessors who, presumably, will increase assessed valuations so that not only the Little Rock School District, but the City of Little Rock and the other governmental agencies involved in this case will get more money. If there ever was a case of diversion of school funds, this is it.

I know that taxes should be equalized; I know that schools are entitled to more money; I believe in education. But I believe in the Law; and I believe that when a Court puts expediency ahead of the Law, the Court makes a great mistake; and I think that is what has been done by the majority in this case.

For the reasons herein stated, I respectfully dissent.