LATHAM *v.* HUDSON, COUNTY JUDGE.

5-1005                                            292 S. W. 2d 252

Opinion delivered July 2, 1956.

*Walter L. Brown* and *Robert C. Compton,* for appellant.

*Bruce Bennett* and *Wm. I. Prewitt,* for appellee.

LEE SEAMSTER, Chief Justice. Appellant, J. H. Latham, filed a suit in Chancery Court of Union County, First Division, against Frank Hudson, County Judge, and Horace Williamson, Union County Supervisor of Schools. The other appellant, Howard H. Horne, filed an intervention in the same suit, seeking the same relief and bringing in these additional defendants: Perry Long, Treasurer of Union County, The Arkansas Appraisal Service Company, Inc., also Horace Williamson, W. R. McHaney and E. H. Davidson, as members of the Board of Equalization of Union County, Arkansas.

The purpose of the suit was to enjoin the defendants from carrying out an alleged contract entered into by and between the County Court of Union County, as party of the first part, the Board of Equalization of Union County, party of the second part, and the Arkansas Appraisal Service Company, Inc., party of the third part. In the contract the party of the third part agreed to perform the following services.

"1.   Compile a list of record owners of the city real and personal property and of the rural real and personal property wherever situated or located in said Union County, Arkansas, as of January 1, 1955, wherever possible and as of January 1, 1956.

"2.   Make a survey and appraisal of the city and rural real property wherever situated or located in said Union County, Arkansas, such surveys and appraisal to include all improvements and timber located thereon.

"3.   Make a survey and appraisal of all commercial inventories and other personal property except autos, furniture, monies in the bank, farm livestock and equipment, and all items of personal effect.

"4. Make a survey and appraisal of all minerals in commercial production and the properties of all related industries.

"5. Make a survey and appraisal of all other real and personal property wherever located in Union County, Arkansas, except for all property assessed by statute by the Arkansas Public Service Commission.

"6. Procure all information possible and available for the use of first or second party when second party is sitting as the Board of Equalization of Union County, Arkansas, and to provide service as a witness and professional aid to the Board in its hearings and in any litigation arising from any assessments made on the basis of information furnished by third party.

"7. Provide second party with a record of all appraisals made; such records to contain (a) photographs of all real estate improvements estimated to be of more than $1,000.00 in value, (b) land descriptions, (c) record ownership (d) description, size, type of construction and area of buildings and, (f) the computation of the appraisal value of the property described.

"8. Furnish second party with all reports, records and pertinent data prepared or obtained by third party in carrying out the duties imposed hereinabove, such reports, records and pertinent data to become the property of second party upon completion of the appraisal work covered herein, and to provide second party with a summary report of findings upon completion of the said appraisal work, such report to be prepared and bound in any form devised by second party.

"Furthermore, it is agreed that the above recited compilations, surveys, appraisals and services shall be accomplished by third party on or before the third Monday in October, 1956.

"Recognizing that the cooperation of the parties hereto is of special importance in agreements of this character, the Board of Equalization and the County Court of Union County, Arkansas, expressly agree to

use all of their lawful powers in carrying out the purposes of this agreement.

"It is understood and agreed by and between the parties hereto that this instrument is a contract of employment by and between the County Court as the primary employer, the Board of Equalization as the secondary employer and the Arkansas Appraisal Service Co., Inc., as the third party. If, for any reason, it should be held that first party or second party is an improper party to this agreement or is without power to enter into this agreement, then it is hereby expressly agreed that this shall be a binding contract between the legal parties herein accordance with all of the provisions herein."

The contract also provided that the third party would be paid the total sum of $125,000, payable at the rate of $6,250 each month for a period of 20 months. The money was to be paid after an audit of the accounts by the County Court and out of the County General Fund.

The complaint further alleged that by proper resolution of the School Board of Union School District No. 2, and other school districts, municipalities and taxing units in Union County, by proper resolution, had agreed, by resolution with the County Court of Union County, to pay a specified amount each month out of each taxing unit's funds into the General County Fund for the purpose of paying each taxing unit's proportionate part of the cost of procuring the appraisal as provided in said contract.

The points raised on appeal are as follow:

1. Act 371 of 1955 is void for the reason that it takes from the County Court the exclusive jurisdiction over the expenditure of county funds.

2. The County Court had no authority to execute the contract.

3. Money is being paid out under the provisions of the contract without a valid appropriation by the Quorum Court of Union County, Arkansas.

4. The contract is void for the reason that it calls for the diversion of tax moneys from the purposes for which the money was levied and collected, in violation of the Constitution and Statutes of the State of Arkansas.

Section 5, Article 16 of the State Constitution provides: ''All property subject to taxation shall be taxed according to its value, that value to be ascertained in such manner as the General Assembly shall direct, making the same equal and uniform throughout the State. No one species of property from which a tax may be collected shall be taxed higher than another.''

From this section, it is clear that the Legislature has not only the right, but it also has the duty to prescribe by law the manner in which the value of property shall be ascertained, for taxing purposes, making the same equal and uniform throughout the State.

The several General Assemblies, in recent years, have passed various acts in an effort to accomplish the Constitutional provision to equalize property taxes. Some of these Acts are: Act No. 9 of 1951, Special Session; Act 371 and Act 153 of the Acts of 1955; and, Act No. 351 of 1949. All of these Acts pertain to the assessment of property and to the adjustment of such assessments in an attempt to make them equal and uniform throughout the State.

Act 153 of 1955 provides, among other things, that the Public Service Commission may cause the State turnback or aid withheld from any county, municipality or school district that fails to adjust and equalize assessments on property at ninety per centum (90%) of twenty per centum (20%) of the true, actual and full market value.

Under Act 153 of the Acts of 1955, the Arkansas Public Service Commission, through its Assessment Coordination Division, is empowered and directed to assist

the several assessors in the State of Arkansas, in the assessment of property for tax purposes. This assistance is limited to recommendations and advisement since the division has no authority to make the assessments. The division is directed to coordinate the work of the assessor and the county equalization boards, with the purpose in view of causing all property in the State to be assessed in an equal and uniform manner. The Commission is also given authority to compel the county officers of this State, by mandamus, to perform their duties and assess all of the property in conformity with the law.

Section 22-601, Ark. Stats., 1947, provides: "The county court of each county in this State shall have the following powers and jurisdictions: Exclusive original jurisdiction in all matters relating to county taxes . . . to disburse money for county purposes, and all other cases that may be necessary to the internal improvement and local concerns of the respective counties."

By the passage of Act 153 of 1955, the Legislature has made it mandatory on the counties to procure a property assessment and valuation of all property assessed for tax purposes, so that the same is equal and uniform. Each county is compelled to perform its duty under the act or suffer the loss of a portion or all of the State's turnback or aid to said counties, or the taxing units therein.

From what has already been said, it is obvious that the Legislature has placed a heavy burden upon the county courts. We cannot conceive that the framers of our Constitution and the members of our several general assemblies meant to place this heavy burden on the county courts and at the same time deny them reasonable means for discharging such burden.

We hold that the county courts have the power and authority, under the general powers conferred upon them by our State Constitution and legislative acts, to enter into contracts for the employment of professional appraisers. The county court has the right to deter-

mine the necessity for the employment of professional appraisers and to fix the compensation to be paid for their services. See *Strawn* v. *Campbell, County Judge,* opinion of this Court, May 28, 1956, 226 Ark. 449, 291 S. W. 2d 508, *State Use of Prairie County* v. *Leathem and Company,* 170 Ark. 1004, 282 S. W. 367; Section 28, Article 7, Constitution of Arkansas; Section 22-601, Ark. Stats., 1947.

It is unnecessary to pass upon the constitutionality of Act 371 of 1955 since (1) the question was not raised in the trial court, and (2) in the instant case the county court had the power to enter into a valid contract under the provisions of other sections of our statutes enumerated above.

There is no merit in the contention that money was paid out under the provisions of the contract, without a valid appropriation by the quorum court. The complaint alleges that an appropriation was made by the quorum court. That appropriation is valid since the law requires the quorum court to make an appropriation for such purposes. See Section 17-409 (6), Ark. Stats., 1947. The contract was re-executed after an appropriation was made by the quorum court; therefore, it is a valid contract. *Craig* v. *Grady,* 166 Ark. 344, 266 S. W. 267.

We do not agree with appellants' contention that the monies to be expended under the terms of the contract herein constitute a diversion of tax monies from the purpose for which the money was levied and collected. The State Constitution, Section 5, Article 16, clearly gives the General Assembly the authority to require the county and its taxing units to pay their pro rata share of the costs of assessing property, a portion of which may be applied to the expenses of employing professional appraisers. *Strawn* v. *Campbell, County Judge,* supra; *County Board of Education* v. *Austin,* 169 Ark. 436, 276 S. W. 2.

Finding no error, the decree is affirmed.

Mr. Justice McFADDIN dissents.

ED. F. McFADDIN, Associate Justice (Dissenting). As I understand the majority opinion in this case, it holds on two points:

I. The majority says that there have been a number of Acts passed by recent Legislatures, all looking to the matter of equalizing assessments of values; and, without deciding what is unconstitutional in any of these Acts, the majority says that it finds enough legislative authority from various portions of these enactments to support the legality of the contract here involved. I refer to this point as "the power to contract."

II. The majority says that the contract here involved does *NOT* violate the rule that school funds are trust funds and cannot be diverted. I refer to this point as the "diversion of school funds."

I find no occasion to prolong my dissent by discussing point I - i.e., the power to contract — because I feel so deeply about the majority holding on point II — i.e., diversion of school funds — that I prefer to discuss it in some detail.

The complaint of appellants alleged that the total cost of the appraisal services was to be $125,000.00; that this was to be paid by the various taxing units on some predetermined basis; and that various school districts were to pay school funds for such appraisal. The complaint alleged the exact amount that each school district and other taxing unit in Union County was to pay. The complaint then said in Paragraph 9:

"That the said Union School District No. 2 of Union County, Arkansas, by and through the Defendant, Horace Williamson, is making illegal, unauthorized and unlawful payments of tax funds into the General Fund of Union County, Arkansas, in that Union School District No. 2 has neither the power nor authority to expend its funds for the purpose set forth in the said contract. That he has stated he will continue making such payments unless restrained by this Court."

Attached to the complaint and made a part was a copy of the Resolution of Union School Board, whereby that School Board was to pay from school funds a total of $1733.83 over a 20-months period and that was to be for the tax appraisal study.[1] In the face of the allegations and exhibit to the complaint, I cannot see how this Court can sanction such diversion of school funds. Our laws require that a budget be submitted to the electors of each school district before the annual election; and the school authorities are forbidden to depart from such budget. Yet in the case at bar this Court is now allowing a school board to spend money for a purpose that was never contemplated at the time the school budget was adopted. In my dissenting opinion in the case of *Strawn* v. *Campbell*, 226 Ark. 449, 291 S. W. 2d 508 (case No. 990 in this Court, original opinion delivered May 28, 1956, modified opinion delivered July 2, 1956), I discussed in some detail this matter of school funds being trust funds; and I refer to that dissenting opinion for a full statement of my views. I now say that there is absolutely no law in Arkansas—except for the present judge-made law of the majority in this case—that sanctions such a diversion of school funds as this present opinion now approves. So, without discussion of point I, I have stated my views on point II and my conscience is clear.

---

[1] The complete Resolution is as follows: "Honorable Frank H. Hudson, Union County, El Dorado, Arkansas. WHEREAS, the Union School Board met in a regular called session on the 3rd day of May, 1955, and by a majority vote passed the following resolution; and WHEREAS, it was determined by the said School Board that a Tax Appraisal Study of Union County would be to the benefit of our School District and would produce additional revenue over a period of time; and WHEREAS, it is necessary for the County to spend $125,000.00 to pay for the cost of said study; and WHEREAS, a pro rata cost for each taxing unit for such study has been determined based on the 1954 Ad Valorem Tax; and WHEREAS, it has been determined that the pro rata cost part for this School District is the sum of $1,733.83 which sum should be paid over a 20-month period of time, the first payment being due on the 10th day of July, 1955; and NOW THEREFORE, be it hereby resolved that this School Board does hereby agree to pay into the Union County General Revenue Fund the sum of $86.69 per month until the total cost of $1,733.83 be paid, said total cost being apportioned over a 20-month period in equal payments and we do hereby agree to make the first payment of 1/20th of the total sum on the 10th day of July, 1955. IN WITNESS WHEREOF, we have hereunto set our hands on this 3rd day of May, 1955. Dean Pritchard, Pres., W. M. Talor, Sec."