STATE ex rel. NORWOOD, ATTORNEY GENERAL, v. KANSAS CITY & MEMPHIS RAILWAY & BRIDGE COMPANY.

Opinion delivered January 20, 1913.

1. TAXATION—ASSESSMENT—OVERDUE TAXES.—Under Act 354 of the Public Acts of 1911, page 324, which provides: "When the Attorney General is satisfied * * * because of any pretended assessment and levy of taxes upon any basis of valuation other than the true value in money of any property hereinafter mentioned or from any other cause * * * that there are overdue and unpaid taxes owing to the State * * * it shall be his duty to institute a suit * * * for the collection of the same * * *," when the defendant has paid the taxes on the yearly assessment made on its property, the State can not recover further taxes when merely a mistake has been made in assessing the property too low and a review by the courts is permitted only when the assessing boards or officers have proceeded in the wrong basis of valuation in omitting some property or element of value or in adopting the wrong basis of estimating value. (Page 253.)

2. TAXATION—FINDINGS OF OFFICERS.—The policy of the law is to treat the findings of assessors, supervising boards and commissions as final except when otherwise expressly provided by statute." (Page 254.)

Appeal from Crittenden Chancery Court; *Charles T. Coleman*, Special Chancellor; affirmed.

*H. L. Norwood*, Attorney General, *Wm. H. Rector*, Assistant, *A. B. Shafer* and *C. H. Trimble*, for appellant.

*W. J. Orr* and *Moore, Smith & Moore*, for appellee; *W. F. Evans*, of counsel.

*H. C. Mechem, amicus curae.*

McCULLOCH, C. J. This action was instituted by the State of Arkansas, on the relation of the Attorney

General, in the chancery court of Crittenden County against the Kansas City & Memphis Railway & Bridge Company, a domestic corporation, to collect back taxes· on its railroad and bridge property alleged not to have been adequately assessed for the years 1893 to 1910, inclusive.

The defendant was, according to the allegations of the complaint, incorporated under the laws of the State of Arkansas as a railroad corporation with power to build a railroad from a point in Crittenden County, Arkansas, to the eastern boundary of the State opposite the city of Memphis, and that by act of Congress it was empowered to build a bridge across the Mississippi River, also being authorized by the laws of the State of Tennessee to lay tracks in that State to connect with other railroads therein; that in pursuance of said power it built a railroad three and one-tenth miles in length, of which 2,680 feet were laid upon the bridge constructed for that purpose across the river.

The mileage in Arkansas and one-half of the bridge mileage is sought to be taxed.

The action is based on the statute originally enacted by the General Assembly of 1887, and amended in 1911, so as to read as follows:

"Where the Attorney General is satisfied, from his own investigations, or it is made to appear to him by the statement in writing of any reputable taxpayer of the State, that in consequence of the failure from any cause to assess and levy taxes, *or because of any pretended assessment and levy of taxes upon any basis of valuation other than the true value in money of any property hereinafter mentioned, or from any other cause,* that there are overdue and unpaid taxes owing to the State, or any county or municipal corporation, or school district, by any corporation, or upon any property now in this State which belonged to any corporation at the time such taxes should have been properly assessed and paid, that it shall be his duty to at once institute a suit or suits in chancery, in the name of the State of Arkansas for the collection of the same, in any county in which the cor-

poration owing such taxes may be found, or in any county in which any part of such property as may have escaped the payment, in whole or in part, of taxes as aforesaid, may be situated, in which suit or suits the corporation owing such taxes, or any corporation or person claiming an interest in any such property as may have escaped taxation as aforesaid, shall be made a party defendant, and the Governor is authorized to employ any attorneys that may be necessary to assist the Attorney General in such suits.''

It is alleged in the complaint that defendant's property has, for the years named, been assessed for taxation at only about one-sixth of its true value. It alleges, therefore, as grounds for recovery, that the property has been undervalued for that period, and for that reason alone a determination by the court of the true amount of taxes which should have been paid and a decree for the recovery thereof is prayed for.

The court sustained a demurrer to the complaint, and the plaintiff appealed.

It is contended on behalf of the State that the mere undervaluation of property for purposes of taxation falls within the terms of said statute authorizing review by the court. On the other hand, the defendant contends that it is only where property has escaped taxation by reason of assessments made on a wrong basis, omitting some property or element of value, that the statute authorizes re-examination of the assessment by the courts.

The controversy, of course, involves the construction of the language of the statute in order to ascertain its true meaning.

No argument is made that undervaluation falls within that clause of the statute referring to ''failure from any cause to assess and levy taxes;'' but the State relies on the next succeeding clause, which reads, ''because of any pretended assessment and levy of taxes upon any basis of valuation other than the true value in money.''

Stripping the whole section of all words not essential to a fair understanding and construction of this clause, it reads as follows:

"Where the Attorney General is satisfied, * * * that * * * because of any pretended assessment and levy of taxes upon any basis of valuation other than the true value in money of any property hereinafter mentioned * * * that there are overdue and unpaid taxes owing to the State * * * by any corporation, or upon any property now in this State which belonged to any corporation at the time such taxes should have been properly assessed and paid, that it shall be his duty to at once institute a suit * * * for the collection of the same," etc.

It must be conceded that if the above quoted clause had been intended to apply to the mere undervaluation of property in the assessment for taxation, more appropriate and direct terms might have been employed. That meaning could have been clearly expressed thus: "because of an undervaluation in the assessment," or "because of the assessment at a valuation less than the true value in money." The language of the clause is ambiguous, and if it includes a mere undervaluation of taxable property, it does so in a very vague and uncertain manner of expression, which naturally suggests to the reader the inquiry why more appropriate words were not used. In the first place, the words *"pretended* assessment," imply more than a mere undervaluation. "Pretended" means: false, unreal, simulated, feigned. A pretended assessment is one which omits something in the way of an element or basis of value. An assessment which omits no property or element of value, though made at less than the true value, is not a pretended assessment within the meaning of the statute. Of course, a fraudulent or collusive undervaluation would come within its meaning. In the next place, the use of the word *"basis"* shows that the framers of the statute did not mean to include a mere undervaluation, but intended only to include a pretended assessment made on a wrong basis. If not, why was that word used? It would have been sufficient to say, "assessments upon any valuation other than the true

value in money," without saying anything about the
basis of valuation. The word "basis," according to Mr.
Webster, means: foundation, or groundwork, of any-
thing; or that upon which it rests. The principal com-
ponent parts of a thing. The basis of valuation is, there-
fore, the component parts or elements upon which the
valuation rests—not the valuation itself. That is the
sense in which this court referred to basis of valuation
for the purposes of taxation in the case of *Pike* v. *State*,
5 Ark. 204. This view is emphasized and confirmed by
language subsequently used in the section restricting
the proceedings to property "which belonged to any cor-
poration at the time such taxes should have been prop-
erly assessed." Note the fact that the statute only
authorizes a review by the court of assessments on prop-
erty which belonged to corporations at the time it was
improperly assessed or not assessed at all. Property
owned by natural persons at the time it escaped proper
taxation is not included, even though owned by a cor-
poration at the time the litigation begins. The law-
makers may have had in mind that under the general
revenue laws of the State, the method of assessing prop-
erty of corporations was entirely different from that pro-
vided for assessing property of natural persons, and that
on account of its complications admitted more difficulty
in adopting the correct basis of valuation; therefore,
authority was given for the courts to review assessments
of corporation property made on erroneous bases of
valuation.

The words, "may have escaped the payment, in
whole or in part, of taxes," used later in the same section
of the statute, are not without significance in interpret-
ing the meaning of the clause now under consideration.
Those words naturally apply to property which has been
omitted from the assessment, or where the basis or some
of the elements of value have been omitted—and not to
an undervaluation. Property which has been duly listed
for taxation and assessed upon the correct basis, includ-
ing the proper elements of value, even though assessed
too low on account of defective judgment of the assessing

officers, can not be said, in the ordinary meaning of the words, to have escaped taxation. *Adams* v. *Luce,* 87 Miss. 220, 39 So. 418.

Our conclusion is, that this clause of the statute only gives the State a remedy by way of review by the courts where the assessing boards or officers have proceeded on the wrong basis of valuation, in omitting some property or element of value, or in adopting the wrong basis of estimating value. It does not authorize review where merely a mistake has been made in assessing value of property too low. Nor does the next succeeding clause, "or from any other cause," add anything so far as relates to mere undervaluation of property. The doctrine of *ejusdem generis* applies and limits that to the specific provision which precedes it. *Eastern Arkansas Hedge Fence Co.* v. *Tanner,* 67 Ark. 156; *Hempstead County* v. *Harkness,* 73 Ark. 600; *St. Louis, I. M. & S. Ry. Co.* v. *Love,* 74 Ark. 528. Those words, instead of adding some other ground for remedy, merely serve to emphasize the intention to give a remedy where property has escaped taxation by omission from assessments or by assessing it on an incorrect basis which results in the omission of some essential element of value.

Considering the language of the statute as a whole, it is intended to limit overdue and unpaid taxes to be recovered under the statute to such only as have escaped payment on account of omission from assessment or on account of assessment made on the wrong basis.

A consideration of the history of the legislation on the subject and the conditions which led up to the enactment of this statute greatly strengthens our construction, for it shows that the statute was passed in order to provide a remedy where property had escaped assessment or had been assessed on the wrong basis of valuation, and not merely an undervaluation. The act of 1879 adopted as the basis for ascertaining the value of railroad property, for purposes of taxation, the net earnings of the road from its business. The general revenue law of 1883 changed the method of assessment and adopted a new method of considering the value of

the tangible property of the railroad, but attempted to exclude the value of embankments, tunnels, cuts, ties, trestles and bridges. This court, in *Little Rock & F. S. Ry. Co.* v. *Worthen,* 46 Ark. 312, decided that the exemption was void as being in conflict with the provisions of the Constitution which require that "all property subject to taxation shall be taxed according to its value, and that "all laws exempting property from taxation, other than as provided in this Constitution, shall be void." Art. 16, § § 5 and 6. During the following session of the General Assembly, in 1887, the act of 1883 was amended so as to require all parts of railroad tracks to be assessed; and at the same session an act was passed in the exact language of the amendatory statute hereinbefore quoted now under consideration, except the provision fixing the amount of fee to be paid to the attorneys appointed to assist the Attorney General in conducting the litigation. The conclusion is almost irresistible that the act was passed for the main purpose of providing means for recovering back taxes which remained unpaid on account of the erroneous assessments under the act of 1883 as well as under the assessments made pursuant to the act of 1879, which, as before stated, adopted net earnings of railroads as the basis for ascertaining value for purposes of taxation. The statute was undoubtedly prompted, to say the least of it, by the decision of this court holding that railroad property had, under prior statutes, been assesed upon the wrong basis.

The view which we take of the statute brings it more in harmony with the general policy of our laws with reference to the finality of acts of assessing boards or officers, than if we should hold that it permitted a review on account of mere undervaluation. The general revenue laws of the State provide for assessors and supervising boards and commissions, and the declared policy is to treat their findings as final except where otherwise expressly provided by statute.

In the recent case of *State* v. *Little,* 94 Ark. 217, we said that "the Legislature having provided the agencies for the assessment of property for taxation and the man-

ner of its exercise, the action of such officers is conclusive on the State in the absence of a statute to the contrary; and the courts have no power to supervise and correct the assessments made by them.''

The same policy is found by the Supreme Court of the United States to exist in most of the States, as expressed by that court in the following language:

''In nearly all the States, probably in all of them, provision is made by law for the correction of errors and irregularities of assessors in the assessment of property for the purpose of taxation. This is generally through boards of revision or equalization, as they are often termed, with sometimes a right of appeal from their decision to the courts of law. They are established to carry into effect the general rule of equality and uniformity of taxation required by constitutional or statutory provisions. Absolute equality and uniformity are seldom, if ever, attainable. The diversity of human judgments, and the uncertainty attending all human evidence, preclude the possibility of this attainment. Intelligent men differ as to the value of even the most common objects before them—of animals, houses and lands in constant use. The most that can be expected from wise legislation is an approximation to this desirable end; and the requirement of equality and uniformity found in the constitutions of some States is complied with, when designed and manifest departures from the rule are avoided. To these boards of revision, by whatever name they may be called, the citizen must apply for relief against excessive and irregular taxation, where the assessing officers had jurisdiction to assess the property. Their action is judicial in its character. They pass judgment on the value of the property upon personal examination and evidence respecting it. Their action being judicial, their judgments in cases within their jurisdiction are not open to collateral attack. If not corrected by some of the modes pointed out by statute, they are conclusive, whatever errors may have been committed in the assessment.'' *Stanley* v. *Supervisors of Albany,* 121 U. S. 535.

Another matter which is not without force in construing the statute, is the difficulty which reviewing courts would find in ascertaining, after lapse of time, the true value of property alleged to be undervalued, and in measuring the weight of testimony adduced against the judgment of the officers or boards as evidenced by the records of assessments made by them; whereas an examination of schedules returned by corporations to assessing boards, as required by law, and comparison with the assessments returned by the assessors would render the task less difficult for courts to determine, after lapse of time, whether or not property had escaped assessment or had been assessed on the wrong basis. In such an inquiry the decision of this court in *Kirst* v. *Improvement District*, 86 Ark. 1, furnishes some rules of evidence as guides.

After careful consideration of the statute, we are of the opinion that a cause of action thereunder was neither stated in the complaint nor established by the evidence and that the decision of the chancellor is correct.

Decree affirmed.

KIRBY, J., dissents. · SMITH, J., not participating.