HARRISON *v.* FOURCHE RIVER VALLEY & INDIAN TERRITORY RAILWAY COMPANY.

Opinion delivered February 2, 1920.

1. TAXATION—RELIEF AGAINST ASSESSMENT BY TAX COMMISSION.—Courts of equity will not grant relief from an excessive assessment of taxes due to a mistake of judgment of a taxing board or commission, unless induced by fraud, mistake, discrimination, nonuniformity or adoption of a fundamentally erroneous method of assessment.

2. TAXATION—EXCESSIVE ASSESSMENT OF RAILROAD.—The mere fact that the Tax Commission has assessed the valuation of a railroad at an excessive figure will not entitle the company to relief in equity where it does not appear that the commission adopted an erroneous method of making the assessment.

Appeal from Perry Chancery Court; *Jordan Sellers,* Chancellor; reversed.

*Geo. W. Emerson,* prosecuting attorney, and *G. B. Colvin,* deputy prosecuting attorney, for appellant.

There are two questions involved:

1. Did the court have jurisdiction?

2. Is the evidence sufficient to sustain the findings and decree? On the first neither fraud nor mistake were alleged and the court had no jurisdiction. 63 Ark. 576; 40 S. W. 710.

No appeal from the decision of the commission was provided for in Act 257, Acts 1909, page 764. 90 Ark. 413; 119 S. W. 251. See also 94 Ark. 217; 126 S. W. 713.

The findings of assessors and boards are conclusive, except where otherwise provided. The assessment against the railroad is not arbitrary, discriminatory or unfair and did not constitute fraud, and the act of the assessing board or commission is final. 106 Ark. 248; 153 S. W. 614. The decree reducing the assessment should be reversed and the injunction dismissed. *Supra.*

*Rose, Hemingway, Cantrell & Loughborough,* for appellee.

The testimony shows that all the facts were duly presented to the Tax Commission and it clearly appears that the assessment can not be sustained upon any known basis of valuation. On a stock and bond basis the valuation was grossly excessive, and on a net earnings basis the assessment was excessive, and it is impossible to sustain it on a basis of present sale value. Upon the facts the assessment was arbitrary and without any reasonable basis, and excessive, and therefore a fraud on the railroad. Kirby's Digest, § § 6906-6974; 62 Ark. 461; 124 *Id.* 569. The court properly granted relief. 2 Cooley on Tax., pp. 1406-7; 63 Ark. 576; 62 *Id.* 461; 124 *Id.* 569; 212 S. W. 317. Chancery courts enjoin such assessments. 75 Ill. 591; 175 *Id.* 383; 7 Okla. 198-206; 24 Mich. 170; 7 Wash. 101; 17 *Id.* 567; 88 Fed. 350; 101 U. S. 153. See also 10 Wis. 264; 74 Mich. 350-355; 106 Wis. 200, 204;

26 Idaho 445; 144 Pac. 1; 235 Fed. 333; 71 So. 926; 81 *Id.* 503; 121 N. E. 629; 114 Fed. 557; 214 *Id.* 180; 222 *Id.* 562. The assessment was *arbitrary* and unsustained by any evidence. The commission ignored the fact that the road had no present earnings and could not operate more than six years longer at all, which were fundamental facts.. Appellee was clearly entitled to relief.

SMITH, J. This suit was brought by appellee railway company to enjoin the collection of the taxes assessed against its railroad for the year 1918, upon the ground that the valuation had been arrived at by the Tax· Commission by adopting an illegal, unauthorized and unjust basis of assessment, and, in an amendment to the complaint, it was alleged that the assessment was arbitrary and discriminatory, and constituted a fraud in law, and further that unless relief was afforded by a reduction of said assessment it would be unable to pay the taxes upon a proper assessment without incurring penalties.

Appellee is a corporation under the laws of this State, with its principal office at Bigelow, in Perry County, and it owns and operates a line of railway from Bigelow, on the Rock Island Railroad, in a southwesterly direction to Thornburgh, a distance of 18-3/4 miles, all of which is in Perry County except .238 of a mile, which is in Pulaski County.

In June, 1918, when property of this character was being assessed by the Arkansas Tax Commission, appellee furnished the commission a schedule of its property, showing, in detail, the several items listed and the aggregate value of the whole railroad, which statement had been duly verified. According to this schedule the valuation of the whole property did not exceed $90,000, but an assessment of $152,450 was made against that part of the property in Perry County, and one of $350 for that part in Pulaski County. It was shown that the outstanding capital of the company is $238,000, and that it has a bonded indebtedness of $100,000. That the railroad began operation in 1907, and for five years re-

ceived a division of the freight collected on shipments oringinating on its line, and delivered to the Rock Island Railroad, but after 1912 it was no longer allowed to share the freight charges with the Rock Island Railroad because of a Federal decision in what was known as the Tap Line Cases. Prior to 1912 appellee paid its stockholders an average dividend of 7.6 per cent., and thereafter until 1915 it paid an average dividend of 2.9 per cent., but since 1915 no dividend has been earned or paid, and in 1917 an operating loss of $7,900 was sustained, and that loss was increased to $37,000 in 1918. It was further shown that 95 per cent. of the operating income was derived from freight paid by the Fourche River Lumber Company on logs and lumber, and that 75 per cent. of the passenger fares collected was paid by the employees of the lumber company, and that it would be impossible to operate the road but for the income derived from the lumber company, which owned enough timber reached by the railroad to keep the mill of the lumber company in operation for from six to ten years, after which time there would probably be no freight or passenger traffic which would justify the operation of the railroad, and that its value would be only its scrapping value, and that the present value of the property if scrapped would not exceed $118,650, and that the entire original cost of the railroad was $355,000.

An assessment of $7,000 per mile was made against the main line of this railroad, and it is insisted that no such value could be arrived at from a basis of income, market value, original cost, or in any other way, and that the assessment was made arbitrarily and capriciously and amounted to a fraud in law. The chancery court granted the reduction prayed for, and this appeal has been duly prosecuted.

This order and decree was based upon a finding made by the court "that the assessment of the main track of the plaintiff in Perry County was made in disregard of undisputed facts and of conditions known to the Tax Commission, that it was arbitrary and could not be

reached on any permissible basis of valuation, that a tax levied upon it would wrongfully deprive the plaintiff of its property without warrant of law, and would operate as a fraud upon it, by reason of which this court has jurisdiction to grant relief upon the payment of a tax levied upon a proper assessment.''

In an opinion in the very recent case of *Martineau* v. *Clear Creek Oil & Gas Co.*, 141 Ark. 596, we had occasion to again review, as the court had several times done before, the authorities defining the conditions under which courts of equity would review the action of assessing boards and grant relief, and we there said that the authorities were agreed that a mere mistake in judgment in fixing the value of property to be taxed, by a taxing board or commission, from whose action no appeal was provided, could not be relieved against in a court of equity; yet we there also also said that courts of equity will restrain the collection of illegal taxes assessed against property by such boards induced by fraud, mistake, discrimination, nonuniformity, or the adoption of a fundamentally erroneous method making the assessment.

Under the test stated we think the court below did not give proper effect to the testimony of Monroe Smith, a member of the tax commission, who was called as a witness and examined and cross-examined at considerable length. This witness testified with apparent candor, and refuted the charge that appellee's railroad had been assessed at a greater amount per mile than any other railroad in the State depending largely on some sawmill for its tonnage, by showing that at least two other railroads were assessed a thousand dollars more per mile, and we think the testimony of the witness makes it clear that there was no conscious purpose on the part of the tax commission to discriminate against appellee. It is true the witness did not make clear the manner in which the commission arrived at the valuation which it had fixed, except that, when asked if the commission took into account the fact that the road had paid no dividends since 1915, and about other matters which should prop-

erly have been considered in arriving at the market value of the property to be assessed, the witness stated that "We took everything into consideration, as we do in all assessments, and arrived at what we believed to be a fair value for the road, taking into consideration everything we could find out or know." In explaining that no controlling effect was given to the lack of earning capacity, witness stated that he supposed its earnings were governed by the allowance which the lumber company made the railroad company for services rendered. It was shown that the lumber company, not only owned all the stock and bonds of the railroad company, but owned practically all the tonnage carried by it. We do not know whether the assumption of the witness was correct or not, as the point was not developed in the testimony, but it is apparent that, however inaccurate the result arrived at may be, the commission did not adopt an erroneous method of making the assessment, as they had taken into account "everything we could find out or know."

This witness testified that the commission had before it the detailed report which the railroad company had made of its property, and its value, as it was required by law to make for the use of the commission in making the assessment, and that the sidetrack was assessed at $2,000 per mile, and that the portions of the road used only for logging purposes were assessed as sidetrack, and that the representatives of the appellee railroad appeared before the commission when the assessment was made and urged then and there the matters here presented, all of which matters were then considered in fixing the valuation which was then made.

We think, under the testimony recited, the finding of fact set out above, which was made by the court below, is contrary to the preponderance of the evidence, and that nothing more is shown than an excessive assessment, resulting from an erroneous judgment, and this error of the tax commission is one against which we can afford no relief.

The tax commission valued the property at $304,000, and assessed it at 50 per cent. of that value, that being the per cent. of value assessed against all other property. So that it appears that the assessed value was about $50,000 less than the construction cost. It is true there was testimony showing a large per cent. of depreciation in value; but there was also some testimony as to enhancement of values and increased cost of reproduction, and while it may be true that the road will be scrapped in the course of six to ten years through lack of tonnage, it is not yet ready to be scrapped, and we cannot say, therefore, that because of the limited expectancy of life of the railroad its present market value cannot exceed its value as scrapped material.

We do not think the case made is one calling for equitable relief, as any error made is one of judgment only, and the decree is, therefore, reversed with directions to collect the tax upon the valuation fixed by the tax commission.