## STATE EX REL. ATTORNEY GENERAL *v.* STANDARD OIL COMPANY OF LOUISIANA.

Opinion delivered March 25, 1929.

*Hal L. Norwood*, Attorney General, and *George Vaughan*, for appellant.

*T. M. Milling, Gaughan, Sifford, Godwin & Gaughan* and *Moore, Gray & Burrow*, for appellee.

McHANEY, J. The State, on relation of her Attorney General, brought this action against appellees to recover back taxes alleged to be due the State on account of an under-assessment of their pipe-line properties. To the

complaint appellees filed a demurrer on the grounds, first, that, under subdivision (h), § 12 of act 129, Acts 1927, page 400, "no suit can be instituted and maintained for the purpose of recovering any alleged overdue taxes under § 10204 to 10209, inclusive, of Crawford & Moses' Digest, or under any laws of Arkansas, without the bringing of such suit having been approved and sanctioned by the Arkansas Tax Commission, and that said complaint fails to allege or set out as a fact that said Tax Commission has in any way sanctioned or approved the bringing of this suit"; and, second, that the complaint fails to state a cause of action.

The chancery court sustained the demurrer, and, on appellant's declining to plead further, the complaint was dismissed as to each appellee for want of equity.

The first question presented for our determination is whether § 10204, C. & M. Digest, same being the act of March 12, 1913, page 724, is repealed by implication or substitution by the act of 1927 above referred to; and, if that question be determined in the affirmative, the second question is whether the complaint in such an action must allege, as a condition precedent to the bringing of the suit, the authority of the Tax Commission, either by its direction or approval.

Section 10204, C. & M. Digest, provides:

"Where the Attorney General is satisfied from his own investigations, or it is made to appear to him by the statement in writing of any reputable taxpayer of the State, that, in consequence of the failure from any cause to assess and levy taxes, or because of any pretended assessment and levy of taxes upon any basis of valuation other than the true value in money of any property hereinafter mentioned, or because of any inadequate or insufficient valuation or assessment of such property, or undervaluation thereof, or from any other cause, there are overdue and unpaid taxes owing to the State, or any county or municipal corporation, or road district, or school district, by any corporation upon any property

now in this State which belonged to any corporation at the time such taxes should have been properly assessed and paid, it shall become his duty to at once institute a suit or suits in chancery, in the name of the State of Arkansas, for the collection of the same, in any county in which the corporation owing such taxes may be found, or in any county in which any part of such property as may be found, or in any county in which any part of such property as may have escaped the payment in whole or in part of the taxes as aforesaid may be situated, in which suit or suits the corporation owing such taxes or any corporation claiming an interest in any such property as may have escaped taxation as aforesaid, shall be made a party defendant, and the Governor is authorized to employ any attorneys that may be necessary to assist the Attorney General in such suits; provided, that this act shall be construed as retrospective as well as prospective in operation.''

The other sections of the Digest following 10204 for the collection of overdue taxes from corporations are not material to this inquiry. Section 12 of act 129 of 1927, *supra,* defines the power and authority of the Tax Commission in the administration of the tax laws of the State. It is divided into 22 subdivisions, running through the alphabet, from ''a'' to ''v'' inclusive. We will not undertake to set out in this opinion the authority conferred upon the Tax Commission by this section under these various subdivisions, nor to review in detail the act as a whole. It is entitled, ''An act to create the Arkansas Tax Commission for a term of years, defining its duties and powers.'' It contains 37 sections. The commission is created for a term of 32 years, composed of three persons, to be appointed by the Governor for terms of eight years each. The commissioners are required to be persons who are familiar with property values in the State, and who have knowledge, experience and skill in the administration of tax laws. They are prohibited from engaging in any business that would interfere or

be inconsistent with their duties as commissioners, or to take part in any political campaign. Sub-section (a) of § 12 gives them full power and authority "to have and exercise general and complete supervision and control over the valuation, assessment and equalization of all property, privileges and franchises; the collection of taxes, and enforcement of the tax laws of the State, and over the several county assessors, county boards of review and equalization, tax collectors, and other officers charged with the assessment or equalization of property or the collection of taxes throughout the State * * *."

By sub-section (b) the commission is to have "the exclusive power of original assessment of the property, both real and personal, used in the operating of carrier pipe-line" and other utility companies. A reading of the various sub-sections of § 12 will disclose that the commission is given very broad and comprehensive powers, including full and complete supervision and control over all matters relating not only to the assessment and equalization of taxes, but also to the collection of any and all taxes, not only taxes now due and collectible in the current year, but any that may be overdue or back taxes, and may require of any public official reports giving such information as it may desire regarding such matters. The commission has authority, by sub-section (j), to require corporations, individuals and partnerships to furnish it full information regarding their capital, gross receipts, net profits, excess profits, current assets and liabilities, values or franchises, value of property, earnings, operating and other expenses, and in fact any information it may desire, "to enable the commission to ascertain the value and relative burden to be borne by every kind of property in this State." If the commission should not be satisfied with such reports, by sub-section (k) it is given the power to summon witnesses to appear and give testimony and to produce records, etc., and furnish all other information the commission may require within the scope of its authority. It

may appoint special investigators with the same inquisitorial powers as the commission has; to conduct any number of investigations, contemporaneously, and many other powers, which clearly show that the commission is vested with broad and comprehensive authority over all matters relating to taxation. Subdivision (h) of § 12 provides that the commission shall have full power and authority "to direct and approve suits to be instituted by the Attorney General, prosecuting attorneys, or attorneys specially employed for such purpose, for the collection of any taxes or penalties due the State or any subdivisions, or compelling any taxpayer to comply with the provisions of the tax laws * * *."

We think this subdivision, taken in connection with the whole act, and especially in connection with other subdivisions of § 12, necessarily repeals by substitution the authority conferred upon the Attorney General by § 10204, C. & M. Digest. Certain sections of the Digest and act 343 of 1923 are specifically repealed, and all other laws in conflict are also repealed. Sections 10204 *et seq.* are not repealed specifically by act 129 of 1927, but it was evidently the intention of the Legislature to place upon the Tax Commission the full responsibility for the enforcement of our tax laws, including the authorization of back-tax suits, to enforce the collection of taxes on property which has been under-assessed, or which has escaped taxation altogether. The language of the act, "to direct and approve suits to be instituted by the Attorney General * * * for the collection of any taxes or penalties," etc., seems clearly to imply that full power in this regard is vested in the commission. The word "direct" has many meanings, but, as used here, we think it means that when the Tax Commission, on investigation, finds that a suit should be instituted, it has the authority to cause the Attorney General to institute such a suit, and the word "approve" necessarily implies the exercise of discretion on the part of the Tax Commission in permitting such a suit to be instituted. It would thus appear

that, if the Attorney General should desire to bring a suit against any corporation for back taxes, he being of the opinion that the property of such corporation has been under-assessed, or that some of its property has escaped taxation, he would be required to report such matter to the Tax Commission for its approval before the institution of a suit. There might be certain facts and conditions existing in relation to the assessment of such company's property in the knowledge of the Tax Commission that would make it inequitable or unjust for a suit to be instituted against it, which might be wholly unknown to the Attorney General. For instance, take the case of the appellees, owners of pipe lines in the State of Arkansas, which are, under our law, common carriers. Their property is required to be assessed by the Tax Commission itself, and in fact one of the assessments questioned in this lawsuit, that for 1927, was made by the Tax Commission. Such companies report their properties to the commission, and the commission may not be satisfied with the return as made by such companies. It may make an investigation on its own account to determine a proper valuation, and, having reached such a conclusion, it is announced to such company that, in the judgment of the commission, its property should be assessed at a higher value than that reported by it. By adjustment across the table, as it were, the commission and the company reach an agreement as to the valuation to be placed upon its property for assessment purposes. In such a case the Attorney General might have no knowledge of the reasons for the making of the assessment, nor how the valuation was determined by the commission. It would seem to be inequitable and unjust to require it to become a defendant in the courts in an effort to overturn the assessment made by the commission by agreement with the company. Thus the reason for requiring the direction and approval of suits to be instituted by the Tax Commission becomes apparent. Whether the old commission, under the old act (§ 9788,

C. & M. Digest), prescribing the duties of the commission, which was § 11 of the Acts of 1909, page 764, had the power we now hold the Tax Commission has under the act of 1927, relative to back-tax suits, we do not decide, as it is unnecessary to do so. The identical question now before the court has never been presented to us before. Nor does this construction of the act constitute the taking away of any of the prerogatives of the Attorney General by the courts, as by the Constitution, article 6, § 22, the Attorney General "shall perform such duties as may be prescribed by law." The Legislature, being the law-making power, may prescribe what duties the Attorney General may perform, and, having once prescribed a certain duty for the Attorney General to perform, is not prohibited from later taking it away and imposing it upon some other officer or board. So in this case the Legislature originally prescribed the duty of the Attorney General with reference to back taxes, or conferred the authority upon him as set out in § 10204, C. & M. Digest, *supra,* but by the act of 1927 it has limited that power by prescribing that the Tax Commission shall "direct and approve such suits."

A statute may be repealed by express provision of a subsequent law, or by necessary implication.

In *Cordell* v. *Kent,* 174 Ark. 503, 295 S. W. 404, we quoted with approval from *McPherson* v. *State,* 29 Ark. 225, as follows:

"There is, however, another rule of construction sometimes employed, which we should perhaps notice, which is that, where the Legislature takes up a whole subject anew, covering the whole ground, revising the whole subject-matter of a former statute, and evidently intending to enact a substitute, the old statute is repealed, although the new statute contains no express words to that effect."

To the same general effect see *Massey* v. *State,* 168 Ark. 175, 269 S. W. 567; *State* v. *White,* 170 Ark. 880, 281 S. W. 678; *Ouachita County* v. *Stone,* 173 Ark. 1004,

293 S. W. 1021; and *Babb* v. *El Dorado,* 170 Ark. 10, 278 S. W. 649.

We think it is well settled by many decisions of this court, as said in *St. Louis, I. M. & S. Ry. Co.* v. *Paul,* 64 Ark. 83, 40 S. W. 705, ''that a statute repeals or operates as an amendment of a prior law on the same subject to the extent that they are in conflict, although the latter is not mentioned in the former.'' And that, in so far as § 10204, C. & M. Digest, reposes in the Attorney General the discretion of the institution of back-tax suits, it has been repealed, and that such discretion is now lodged in the Tax Commission by subdivision (h) of § 12 of the Acts of 1927.

The next question for our determination is whether it is necessary for the complaint in a back-tax suit to allege the direction or approval of the Tax Commission. If so, the complaint was open to demurrer, as no such allegation was contained in the complaint. If not, the demurrer should have been overruled.

The State's power to maintain this suit is dependent entirely upon the statute. *State ex rel. Attorney General* v. *K. C. & M. Ry. & Bridge Co.,* 106 Ark. 248, 153 S. W. 614; *State ex rel. Attorney General* v. *N. Y. Life Ins. Co.,* 119 Ark. 314, 173 S. W. 871; *State* v. *Little,* 94 Ark. 217, 126 S. W. 713; *Harrison* v. *Fourche River Valley Ry. Co.,* 142 Ark. 118, 218 S. W. 208; and *Wallace* v. *Hill,* 135 Ark. 353, 205 S. W. 699.

The power of the State to maintain suits such as the one at bar being purely statutory, the method and procedure prescribed by the statute must be followed as a condition precedent to its right to maintain such action, as judgment and discretion are involved, and must be exercised by those on whom the law has placed the power and authority to act. The reasons therefor are well stated in the case of *Inhabitants of Cape Elizabeth* v. *Boyd,* 86 Me. 318, 29 Atl. 1062, where the court used this language:

''In addition to the other provisions for the collection of taxes legally assessed, the mayor and treasurer of

any city, the selectmen of any town, and the assessors of any plantation, to which a tax is due, may, in writing, direct an action of debt to be commenced in the name of such city, or of the inhabitants of such town or plantation, against the party liable. Rev. St. c. 6, § 175. The question is whether a general direction by the selectmen of a town to a tax collector to commence actions against 'any and all taxpayers' who 'refuse or fail' to pay their taxes, is a compliance with this statute. We think not. The power conferred by this statute requires an exercise of judgment and discretion. A refusal to pay a tax is one thing, a failure to pay is another. The former may be the result of willfulness, or a denial of the legality of the tax. The latter may be the result of sickness and poverty, and an utter inability to pay. In the former case an action may be expedient; in the latter, inexpedient. It is plain therefore that judgment and discretion are to be exercised in determining whether or not an action shall be commenced; and it is a familiar and well-settled rule of law that, when judgment and discretion are to be exercised, they must be exercised by the persons on whom the law has placed the power and authority to act. Their exercise cannot be transferred to another. Such powers are incapable of delegation. Dill. Mun. Corp., § 60, and cases there cited. The plain meaning of the statute is that no action shall be commenced to collect a tax unless its commencement is directed by some one of the boards or officers named; in writing. An oral direction will not be sufficient. When, in any case, an authority is required to be conferred in writing, an oral authority will not be sufficient. Such a requirement is calculated to avoid a dispute respecting the fact, and to protect towns against hasty inconsiderate action by their selectmen. So held in *Morrell* v. *Dixfield,* 30 Me. 157. And each suit should receive a separate consideration. A general direction to the tax collector to commence actions against any and all taxpayers who refuse or fail to pay their taxes is not sufficient. It is not sufficiently specific. It practically

transfers to the collector the power to determine whether or not any particular action shall be commenced, and this the law will not allow. For these reasons we hold the direction in this case insufficient, and the action improperly commenced.''

This case was cited with approval by the Supreme Court of Maine in the case of *Inhabitants* v. *Small,* 89 Me. 154, 36 Atl. 107, where the following language was used:

''Since those decisions, an amendment of the statute provides that the mayor and treasurer of cities, or the selectmen of any town, or assessor of any plantation, to which a tax is due, 'may, in writing, direct an action of debt to be commenced in the name of such city, or of the inhabitants of such town or plantation, against the party liable.' Under this statute it has been held by this court that no action can be commenced or maintained in the name of the town to recover taxes unless its commencement is directed in writing by some one of the boards named in the statute. *Inhabitants of Cape Elizabeth* v. *Boyd,* 86 Me. 318, 29 Atl. 1062. Such written direction being necessary to the maintenance of the action, it must be alleged in the writ. It is a traversible fact, and is put in issue under the plea of the general issue. *Inhabitants of Orono* v. *Emery,* 86 Me. 366, 29 Atl. 1095. Good pleading requires that it should be alleged with time and place.''

See also *Inhabitants* v. *Lawry,* 89 Me. 582, 36 Atl. 1103. In *Ricker* v. *Brooks,* 155 Mass. 400, 29 N. E. 534, it was said:

''The demurrer in this case was rightly sustained. The bill, though brought in the name of the collector of taxes, contained no allegation that there had been a neglect to pay the taxes for three months after committed to the collector. The right of the collector to bring suit in his own name being purely statutory, it was necessary to allege the existence of the fact or facts on which his right to sue depended. St. 1889, c. 334, § 7.''

We conclude therefore that the failure of the complaint to allege that the suit was brought at the direction or with the approval of the Tax Commission was a fatal defect, which was open to demurrer.

The decree of the chancery court sustaining the demurrer and dismissing the complaint for want of equity is correct, and must be affirmed.