STATE EX REL. SMITH *v.* SMITH.

4-4017

Opinion delivered September 30, 1935.

*Carl E. Bailey,* Attorney General, and *Brewer & Cracraft,* for appellant.

*W. L. Ward, Burke & Burke* and *Mann & Mann,* for appellees.

BAKER, J. This is an appeal from a judgment of the Lee Circuit Court. The complaint in this lawsuit was filed by Griffin Smith, as State Comptroller and ex officio

director of county audits, v. Zoll C. Smith, tax collector of Lee County, charging that he had collected certain sums of money for the account of Lee County, belonging to the county road fund, per capita road tax and poll tax, and money belonging to certain drainage districts named in the complaint, and that as collector he had rendered his annual report to the county court of Lee County, wherein he had charged himself with the sums in this suit sued for, and that on August 27, 1930, the county court of Lee County examined the said collector's settlement and approved and confirmed the same, and that thereafter these accounts were examined and audited by the State Auditor and found correct; that Zoll Smith had failed to make payments to the county treasurer of Lee County, and the districts; that copies of the audit were filed with the circuit judge and county judge as required by law, and that the said Zoll C. Smith and surety have failed to pay the same over to the treasurer, though demand has been made therefor; that no suit had been filed by the prosecuting attorney of the district, or the Attorney General, and that Griffin Smith, the State Comptroller and ex officio director of county audits, brings said suit in his official capacity, and prays judgment for the use and benefit of Lee County, and the various drainage districts, in the approximate amount of $28,000.

To this complaint a demurrer was filed, which was sustained by the trial court, and, the plaintiff refusing to plead further, the complaint was dismissed.

The demurrer raises two questions.

The first question is to the effect that the complaint does not state facts sufficient to constitute a cause of action against the defendants. No argument is necessary to show this contention has no merit.

The second matter of the demurrer is to the effect that Griffin Smith has not the power or capacity, or authority, to file and maintain this suit.

The only real question for our consideration on this appeal is the second matter raised upon the demurrer.

Preparatory, however, to a discussion of power and authority of the State Comptroller to file and maintain

this suit, it may be said in the beginning that the Attornew General, shortly after the filing of this suit, by the comptroller, filed a pleading ratifying and confirming the action of the State Comptroller, and that special counsel was employed to aid the prosecution.

Many propositions are discussed upon this appeal, and it will perhaps not be necessary that we discuss or decide all of the different matters presented. It is essential, however, that we determine the power of the State Comptroller, or his authority, to file and maintain a suit of this kind. It is urged very strongly that the matters in Lee County are purely local, and incidental; that the people are satisfied with conditions as they exist; they have re-elected the appellee to the office of collector; that the taxpayers, the county officers, and improvement districts, the ones affected by the alleged shortage, or failure to pay over the money to the county treasury, have failed and refused to file suits therefor, and, that on account thereof, the State Comptroller should not be permitted to maintain this action.

But the matter of political expediency is not conclusive, nor do we think it a proposition of purely local concern, with which the State could of right have nothing to do.

It is true suits may be filed in the interest of the taxpayers of the State by some citizen and taxpayer interested in the enforcement of laws, but it is not, in every instance, that altruistic taxpayers or officers are willing to incur the liability for costs, or assume the trouble and worry necessary to maintain such suits. It might happen, in many instances, under such conditions, that serious losses would follow a neglect to prosecute such causes.

Under and by authority of act 146 of the Acts of 1933, the Comptroller was authorized to file and maintain this suit and suits of similar nature. The title of act 146 is ''An Act to Facilitate the Recovery on the Bonds of Officials in This State, and for Other Purposes.'' One of the provisions of said act is that: ''It shall be the duty of the State Comptroller and ex officio director of

county audits to give notice and make proof of loss to, and demand payment of the surety or sureties on any bond executed by any officer, the affairs of whose office said State Comptroller and ex officio director of county audits is now or may hereafter be directed or authorized by law to check or audit, of any shortage or other liability of said officer for which said surety or sureties may in any wise be liable."

The said act also provides that the State Comptroller and ex officio director of county audits shall, after giving the notice, making the proof and demand aforesaid, certify said shortage or other liability to the Attorney General or prosecuting attorney of the circuit in which said officer resides. Upon the receipt of such certificate it shall be the duty of the Attorney General or prosecuting attorney immediately to take the necessary legal action to recover from said officer and the surety or sureties the amount of said shortage or liability, but that, upon the failure or refusal of the Attorney General, or prosecuting attorney, to file such suit, the State Comptroller and ex officio director of county audits, shall have authority himself to sue to recover such shortage or liability. There is also a provision, whereby special counsel may be employed.

It is argued that the State Comptroller shall not have the authority to file or maintain the suit until there is a failure or refusal on the part of the Attorney General or prosecuting attorney to file the suit; that it is a condition precedent to the right to maintain the suit that such failure or refusal must take place before that power can be exercised by plaintiff in this suit. If we knew of any reason to declare these provisions of act 146 as mandatory, we should not hesitate to do so. While we do not think it is proper to ignore a statute, or its provisions, yet where no substantial right is lost by reason of the failure to comply implicitly with the terms of the statute, where no substantial prejudice results on account of such neglect, we cannot see that it would be proper to sacrifice substantive rights without substantial reason therefor.

This case differs materially and essentially from the case of *State ex rel. Attorney General* v. *Standard Oil Company of Louisiana,* 179 Ark. 280, 16 S. W. (2d) 581. In that case this court said: "The power of the State to maintain suits such as the one at bar being purely statutory, the method and procedure prescribed by the statute must be followed as a condition precedent to its rights to maintain such action, as judgment and discretion are involved, and must be exercised by those on whom the law has placed the power and authority to act."

From the above quotation, it will be observed that this court had no hesitancy in holding that the Tax Commission, or Tax Commissioner, on account of knowledge and acquaintanceship with the facts, had the power, under the statute, to authorize and direct the filing and maintenance of a suit by the State, on relation of the Attorney General.

An analysis of that case and a comparison of it with the instant case will show that in the case at bar the power of investigation, and the right of discretion and determination of what it was proper to do, was in the office of the State Comptroller, the ex officio director of county audits. That office was the repository of facts and information necessary to be had to determine the propriety of the filing and the maintenance of suits.

The State Comptroller having exercised the power and authority granted under act 146, and sought a recovery of a shortage or liability, and the Attorney General having joined in the prosecution of this suit, we fail to see how any prejudice may have resulted to the appellees by reason thereof.

We do not say that any or every provision of act 146 should not have been complied with, but we do say that, since there was no prejudice, no violation of any right of any defendant, the court erred in sustaining the demurrer, particularly after the Attorney General had approved and ratified the proceeding and made himself a party to the prosecution of this cause.

In this case the State Comptroller occupies the same relative position to the prosecution of the suit that the

Tax Commissioner did in the case of *State ex rel. Attorney General* v. *Standard Oil Company of Louisiana, supra.*

The writer cannot assert with positive certainty that in every State in the Union suits of this kind may be brought by the State for the use and benefit of counties, municipalities, or improvement districts, but it is now recognized by the legal profession everywhere that suits may be maintained by and in the name of the State, for the use and benefit of State agencies, or municipalities, or taxpayers, to recover any shortage or liability and to require it to be paid into the proper depository or treasury.

Act 146 of the Acts of 1933, making it the duty of the State Comptroller and ex officio director of county audits to file suits of this class, indicates a certain degree of progress. It places a responsibility upon one in position to require and obtain information, to use that information for the public good and benefit, and does not leave the right to file and maintain a suit merely with some one who might perchance discover such shortage or liability. The creation by the statute of a proper agent to begin and maintain proper litigation cures the defect that arises out of the time-honored adage: "That what is everybody's business is nobody's business."

The provision of act 146 aforesaid requiring notice to be given to the prosecuting attorney, or to the Attorney General, is not necessarily mandatory, and particularly is this true under the rule announced by the early case of *Neal* v. *Burrow,* 34 Ark. 491, wherein this court quoted with approval from Cooley's Const. Lim., page 93. Reference is also made to the case of *Phillips* v. *State,* 162 Ark. 541, 258 S. W. 403, for a discussion of a distinction as between mandatory or directory provisions of statutes.

Under the doctrine as announced in the foregoing case, we are impelled to say that, since failure to comply strictly with that requirement of act 146 to certify the fact of a shortage or liability to the Attorney General or prosecuting attorney, has not resulted in any violation of

the rights of the appellees, or prejudiced their position in the matter of the trial, such provisions must be declared merely directory and not strictly mandatory. Moreover, since the Attorney General has made himself a party to this proceeding and did so shortly after the filing of the suit, and in the absence of any showing that during the interval in which he was not a party prejudice of any kind resulted to the appellees, we would hesitate to approve the strictly technical action of dismissing the proceedings. In other words, we are willing to say that the filing and maintenance of this suit, under the facts appearing in this record, is in substantial compliance with act 146 of 1933.

It is also urged that since the audit and discovery of the shortage substantial payments have been made. This may be true. Such pleading and argument, however, concedes the propriety of the prosecution of this suit, and whatever payments may have been made, of course, will be duly credited by the trial court.

From the foregoing it must be said that the court erred in sustaining the demurrer and in dismissing plaintiff's action.

The cause is therefore reversed and remanded, with directions to the trial court to overrule the demurrer, permit the defendant to answer, and to proceed with an orderly trial of the cause.