STATE, USE INDEPENDENCE COUNTY *v.* BAKER.

4-5415                                         126 S. W. 2d 937

Opinion delivered March 27, 1939.

*Preston W. Grace,* for appellant.

*R. W. Tucker* and *S. M. Casey,* for appellee.

GRIFFIN SMITH, C. J.   The questions are, Did the complaint state a cause of action, and did chancery have jurisdiction?

The State of Arkansas, through its prosecuting attorney for the Third Circuit, brought this action for the use and benefit of Independence county against Edgar Baker, county and probate clerk.  Bondsmen were joined as defendants.

It was alleged that during 1935 and 1936 the defendant Baker presented to the county court various claims for official services, which were allowed and paid; that such defendant, at the time the accounts were presented

and when payment was received, knew he was not entitled to the amounts demanded, and that "His procurement of such orders of allowance with the knowledge that he was not entitled thereto amounted to fraud in the procurement of such orders of allowance."

The excesses and unauthorized charges alleged in the complaint to be fraudulent amount to $1,055.43.

Baker demurred to the complaint. He also filed an answer and cross-complaint, and a motion to dismiss. The cross-complaint alleged that through error, claims for sums to which the clerk was legally entitled for services rendered in 1933, 1934, 1935, and 1936, had not been filed, or presented to the county court.

The decree found that the demurrer should be over-ruled, but that the motion to dismiss should be treated as a special plea of *res judicata*, and sustained. It was also held that the pleadings and proof ". . . were not sufficient to establish such fraud as would authorize collateral attack as against the county court allowing Edgar Baker's claims." The cross-complaint was dismissed. No appeal was taken from the action of the court in dismissing the cross-complaint, and that order has become final.

The first item of the complaint alleges that Baker collected $253.90 for cancelling and redeeming warrants at ten cents each.[1] Notation on the State Comptroller's re-

---

[1] Section 1 of act 157, approved March 25, 1933, amends § 4573 of Crawford & Moses' Digest. That part of the act applicable to county clerks appears as § 5661 of Pope's Digest. By checking the fee items as they appear in the published Acts of 1933 with §§ 5661 and 5659 of Pope's Digest, it will be observed that items which should appear in § 5661 of the Digest are omitted from that section, but are erroneously included in § 5659, and that numerous duplications appear.

Attention might also be called to a typographical error in Pope's Digest. The 26th item appearing on page 1541 is: "For every rule or order not heretofore specified, 20c." This item, having been copied from the County Clerk's schedule, is shown in act 157 (first item, page 486) to be ten cents instead of twenty cents. An inspection of the original bill in the office of the Secretary of State shows that ten cents is the correct figure.

The fourteenth item of § 5662 of Pope's Digest is: "For furnishing for publication copy of the delinquent list of delinquent and

port, and evidence on behalf of the plaintiff, are to the effect that the fees were not earned ". . . because no record was kept to conform with § 2010, C. & M. Digest, so as to show the county debt."[2]   Purpose in requiring that redeemed warrants be entered is ". . . to show at all times the full amount of the indebtedness of the county." Appellant assigns two reasons for seeking to surcharge this item: (1) The services were not rendered; (2) the law does not authorize such charge, even if the book entries had been made.

The clerk testified it had been customary to allow ten cents each for the cancelled warrants.   In the absence of statutory authority, this (custom) would not be sufficient to justify the allowance.[3]   Section 2440 of Pope's Digest, brought from the Revised Statutes,[4] makes it the

insolvent taxpayers, for each name, . . . 5c." Act 169, approved March 21, 1935, which now appears as § 13834 of Pope's Digest, makes it the duty of the collector "to cause to be published in some newspaper . . . a list of those persons who have failed or refused to pay the personal property taxes assessed against them. . . . The newspaper publishing the list shall receive as publication cost the sum of ten cents per name, which sum, together with five cents per name for the collector preparing and furnishing the list, shall be charged to the delinquent taxpayer."

[2] Section 2010 of Crawford & Moses' Digest (now § 2556 of Pope's Digest) is: "It shall be the duty of the county clerk to enter in a book, to be provided by him for that purpose, the amount, number and date of all redeemed warrants or other evidences of indebtedness that may have been cancelled, so as to show at all times the full amount of the indebtedness of the county."

[3] In *Miller County* v. *Magee*, 177 Ark. 752, 7 S. W. 2d 973, this court, quoting from Chief Justice COCKRILL, said:   "Observance of a few general rules deducible from the statutes and decisions will serve to simplify the questions.   Three things must be found to concur before the county court is authorized to allow a claim against a county in favor of an officer for fees:   (1) There must be specific statutory authority to the officer to make a charge for the service rendered; (2) he must be required by the statute, or by the rules of practice or order of the court, to perform the service; (3) the statute must indicate expressly or by fair intendment the intention to permit the fee allowed by the statute for the service to be charged against the county."   [See cited cases.]

[4] Section 2440 of Pope's Digest is shown to be § 34 of Chapter 40 of the Revised Statutes.   This section, however, is from Chapter 41 of the Revised Statutes.

duty of the county treasurer at his annual settlement to produce the warrants redeemed by him during the preceding year, ". . . and the [county judge] shall write the word 'redeemed' across the face of each warrant, and sign his name thereto, and cause all warrants thus redeemed to be filed in the office of the clerk of the county court." [5]

In the absence of citation to authority for making the charge of $253.90, and in view of appellee's testimony that he relied upon custom, the burden rests upon appellee to point to some classification under the fee act or revenue laws whereby the charge became valid.

The second item questioned is $75 for ". . . recording, checking, and posting the county treasurer's fourth quarterly settlement." There is no statutory authority for this charge. However, Act 157 of 1933 (24th item) allows ten cents ". . . for making settlement of each account with the county." Item No. 41 of the Act allows ten cents per hundred words ". . . for recording every paper not heretofore provided for." Treasurers' reports (made annually on the first Monday in July, ". . . and oftener, if so required.")[6] may be recorded at the direction of the county judge, and they should be. When so recorded, the county clerk, under Item No. 41 of Act 157, is entitled to ten cents per hundred words for such service.

The third, fifth, and eighth items, aggregating $39.80, are for ". . . quorum court attending and recording the acts of the court." There is no specific statutory provision for such charge, and reference must again be had to Item 41 of Act 157.[7]

The fourth item is alleged to have been a duplication of a $15 charge. Whether it was, or was not, is a question of fact to be determined in the first instance by the lower court.

[5] Act 41, approved February 18, 1931 (§ 2520 of Pope's Digest), requires the county clerk to preserve warrants for a period of two years after cancellation, after which time, in company with the county judge and county treasurer, he shall burn them."

[6] Pope's Digest, § 2435.

[7] "For recording every paper not heretofore provided for, for every hundred words, 10c."

The sixth and seventh items are for services in executing affidavits of candidates under the Corrupt Practice Act. Section 4 of Act 308, approved April 2, 1913,[8] directs candidates to file such pledges with the county clerk, but it does not contemplate that the county pay the cost. Such costs must be borne by those seeking office.

The ninth item is $196.85 ". . . for 3937 calls of delinquent personal taxes certified to the printer at five cents per tract." Act 169 of 1935 imposed this duty upon the collector. [See last paragraph of footnote No. 1, this opinion.]

The tenth item, $71.55, is alleged to be an overcharge for recording the personal delinquent list. This is a question of fact for first consideration by the lower court.

Item No. 11, $155.60, is alleged to be an overcharge. Payment was made to the clerk by the collector for handling delinquent real property lists, on the basis of thirty cents per tract. Under a subdivision of Act 157 of 1933 there is a title, "Fees for Services Under the Revenue Laws." It authorizes the county clerk to charge ten cents per tract ". . . for furnishing copy of delinquent lands to printer," and ten cents additional ". . . for attending sale of delinquent lands and making record thereof."

Other items are alleged to be duplicates. A correct determination of their verity involves a question of fact for the lower court's judgment.

Appellees have filed in this court a motion to dismiss because of appellant's alleged failure to comply with Rule 9. The motion is overruled.

It is insisted by appellees that the suit is, in effect, a collateral attack on judgments of the county court; also, that the allegations of fraud were not sufficient to give jurisdiction to chancery. Many of our cases are cited as authority for the proposition that if by any evidence a claim presented to the county court could be allowed, and it is allowed without appeal within six months, effect of such allowance is a binding judgment, and that it can only be set aside by showing that fraud was perpetrated upon the court. Mistake of facts in evidence, de-

[8] Act 308 of 1913 now appears as § 4893 of Pope's Digest.

liberate false swearing by witnesses—these are matters entering into consideration of the facts, and if the claimant is not a party to the fraud, the judgment will not be set aside if the court acted in good faith. These general principles of law are not to be denied.

We think, however, that the rule announced in *Johnson County* v. *Bost,* 139 Ark. 35, 213 S. W. 388, is applicable to the instant case, and that it correctly declares the law. In the opinion, written by Chief Justice McCulloch, it was said:

"The contention of appellee is that as to the other items, where there was legal authority for their allowance, but which are claimed to have been erroneous in fact, the evidence fails to show that there was any fraud practiced on the county court in procuring the allowances. Counsel for appellee abstracted the testimony of appellee himself and of the county judge, where it is shown that the accounts were made out upon customary blanks and that there was no concealment of fact, or fraud, in other words, practiced. We are of the opinion, however, that the fact that appellee was the clerk of the circuit court, and thus occupied a confidential relationship toward the county with respect to his duty in correctly keeping the records of the proceedings of the circuit court and the items for which fees were allowed, and that through his two terms he presented very numerous accounts containing illegal and incorrect items, showing that he was systematically padding his accounts, was sufficient to constitute such fraud as would justify a court in setting aside such judgments allowed."

In the Bost Case, *supra,* the improper claims were presented by the clerk of the circuit court. In the case at bar, they were presented by the clerk of the county court. If the relationship of confidence referred to by Chief Justice McCulloch existed between the county judge and the clerk of the circuit court, is it not appropriate to say that a higher degree of confidence and trust would ordinarily exist between the judge of the county court and the clerk of the same court?

In either case, dealings of the kind involved should be characterized by the utmost good faith; and if, by the

application of the rule promulgated in *Johnson County* v. *Bost* the public interest can be protected without, at the same time, depriving judgments of that degree of finality which must attach to them when they are properly procured, every consideration of equity calls for the application of that rule for the benefit of Independence county.

The decree is reversed and the cause remanded with directions that it be retried in a manner not inconsistent with this opinion.