Ralph HORTON et ux *v.* John P. McCONNELL et al

73-166                                      506 S.W. 2d 540

Opinion delivered February 25, 1974

*Clark & McNeil, Jones, Stratton & Jones,* and *Henry & Gaddy,* for appellants.

*Warren & Bullion, Smith, Williams, Friday, Eldredge & Clark,* by: *John T. Williams* and *Michael G. Thompson, Alex G. Streett,* Pros. Atty., and *Nathan Gordon,* for appellees.

CONLEY BYRD, Justice. This litigation arises from a notice by the Assessment Coordination Division of the Arkansas Public Service Commission to the County Judge and other appropriate officials of Faulkner County that the latter would lose their State Turnback Funds if the percentage of assessment of real property in the county was not raised to the minimum level as set out in Act 153 of 1953. Thereafter, all of the school districts and municipalities except Conway School District No. 1 and the City of Conway filed a petition with the county court seeking the employment of qualified appraisers. (It appears that the Conway District and the City of Conway proceeded by a separate petition, but that petition got lost before reaching the county clerk's of-

fice.) The county court properly held the hearing and found that the employment of appraisers was necessary. The members of the equalization board were appointed to negotiate a contract. A contract was negotiated with C. Jack Cato, d/b/a Jack Cato Appraisal Company, to appraise all of the property in the county except that within the Conway School District and the City of Conway. The Conway School District and the City of Conway either employed or contracted with J. D. Kitchens, Harold Eidson, William A. Clark, and Newt Milam to appraise all property in the School District. A contract was later entered into with C. Jack Cato Appraisal Company to appraise certain commercial properties and some areas that Harold Eidson et al were unable to appraise within the time limit. All such contracts were approved by the county court, and, at the time of the institution of this suit, all appraisals had been completed and all parties had been paid.

Appellants Ralph Horton et ux filed this action against the board members of the Conway School District, the Superintendent of the Conway School District, all persons involved in the reappraisal, the equalization board, and several county officials seeking to enjoin the use of such appraisals and to direct that each appraiser refund to the appropriate taxing unit all sums paid to him under the various contracts. The trial court denied appellants any relief, and for reversal they here contend:

"1. The contracts purportedly entered into between C. Jack Cato and all School Districts Municipalities in Faulkner County, other than Conway School District No. 1 and the City of Conway, Arkansas, are invalid due to the failure to comply with the law regarding the employment of qualified professional appraisers.

"2. The contracts purportedly entered into by and between Conway School District No. 1 and J. D. Kitchens, Harold Eidson, William A. Clark and Newt P. Milam, and the purported contracts by and between said Conway School District No. 1 and C. Jack Cato, are all invalid because of the total failure of compliance with the law providing for the employment of qualified professional appraisers."

POINT No. 1. We fail to see how the validity or invalidity of the various contracts of appraisal upon the record before us would affect the right of the assessor or the equalization board to use the appraisals in the valuation of land for assessment purposes. However, we need not stand on that issue as controlling for the taxpayer's remedy by appeal from the actions of the assessor and the equalization board furnishes an adequate remedy at law and a court of equity is without jurisdiction when the litigant has an adequate remedy at law. Consequently, the chancery court properly denied the request to enjoin the use of the appraisals.

POINT No. 2. Neither do we find merit in the contention that the appraisers should be required to refund the moneys received for their services. There is no dispute in the record that the county court properly received a petition from all of the school districts and municipalities except the City of Conway and the Conway School District and that, pursuant to a notice, a hearing was held thereon. At that hearing it was determined that there was a necessity for a reappraisal of the real property and the equalization board, then consisting of three members, was appointed to negotiate a contract. In *Latham* v. *Hudson, County Judge*, 226 Ark. 673, 678-679, 292 S.W. 2d 252 (1956), in approving a contract entered into between the several school districts, municipalities and the county court, we said:

> "From what has already been said, it is obvious that Legislature has placed a heavy burden upon the county courts. We cannot conceive that the framers of our Constitution and the members of our several general assemblies meant to place this heavy burden on the county courts and at the same time deny them reasonable means for discharging such burden.

> "We hold that the county courts have the power and authority, under the general powers conferred upon them by our State Constitution and legislative acts, to enter into contracts for the employment of professional appraisers. The county court has the right to determine the necessity for the employment of professional appraisers and to fix the compensation to be paid for their services. See *Strawn* v. *Campbell, County Judge*, opinion of

this court, May 28, 1956, 226 Ark. 449, 291 S.W. 2d 508, *State Use of Prairie County* v. *Leathem and Company,* 170 Ark. 1004, 282 S.W. 367; Section 28, Article 7 Constitution of Arkansas; Section 22-601 Ark. Stats. 1947."

From the foregoing it would appear that the county court had the authority to enter into the contracts here involved. Consequently, such contracts would not be void and subject to collateral attack after payment by the county court.

Appellants also suggest that the payments made by the Conway School District were invalid and that the portion paid by it is recoverable in this action. In doing so they rely upon the cases of *Blount* v. *Baker,* 177 Ark. 1162, 9 S.W. 2d 802 (1928), and *Shackleford* v. *Thomas,* 182 Ark. 797, 32 S.W. 2d 810 (1930). We find no merit in the contention. *Shackleford* v. *Thomas, supra,* recognized that a school district could not recover money paid out on a voidable contract for services already performed. Furthermore, in *Burnett* v. *Nix,* 244 Ark. 235, 424 S.W. 2d 537 (1968), we approved payments to an appraiser for services directly beneficial to the school district. The appraisals here prevented a loss of the state turnback funds to the school district.

Affirmed.

FOGLEMAN, J., concurs.

JOHN A. FOGLEMAN, Justice, concurring. I concur as to the asserted liability of Cato for payments made under the contract with the county. The undisputed evidence is that Cato was paid by county warrants issued to him after claims filed by him against the county had been allowed by the county court. Appellants, or any other taxpayer, had the right to appeal from these orders. Art. 7, §§ 14 and 33, Constitution of Arkansas; Ark. Stat. Ann. § 27-2001 (Supp. 1973); *Ladd* v. *Stubblefield,* 195 Ark. 261, 111 S.W. 2d 555; *McLain* v. *Miller County,* 180 Ark. 828, 23 S.W. 2d 264; *Echols & Helton* v. *Lincoln County,* 154 Ark. 142, 241 S.W. 881. See also, *Wright* v. *LeCroy,* 184 Ark. 837, 44 S.W. 2d 355; *Swilling* v. *Biffle,* 192 Ark. 608, 93 S.W. 2d 328. Since the county court had jurisdiction of the claims, this afforded them a complete and adequate remedy at law, in the absence of fraud, bad

faith or collusion, none of which is even asserted. *State* v. *Baker*, 197 Ark. 1075, 126 S.W. 2d 937; *Ladd* v. *Stubblefield*, supra; *Monroe County* v. *Brown*, 118 Ark. 524, 177 S.W. 40. See also, *Swilling* v. *Biffle*, supra.

Cato's contracts with the school district are in an entirely different category. By no stretch of the imagination could it be said that there was any compliance with even the jurisdictional requirements of Act 351 of 1949, and amendments thereto. I suppose, however, that the rule that school districts have only those powers expressly granted by statute or necessarily implied in order to enable them to perform the duties expressly imposed upon them by law was eroded by this court's decision in *Burnett* v. *Nix*, 244 Ark. 235, 424 S.W. 2d 537, sufficiently to indicate affirmance of the decree in respect to this contract with Cato and the employment of the individuals for fixing proposed assessed values on residential properties. If the application of the apparent doctrine of the *Nix* case that a school district board has the implied power to employ people to "play a part in preventing assessed values from falling below the minimum percentage required by law for the receipt of all available state-aid funds" as a necessary incident to doing all things necessary for the proper conduct of schools, along with the casual "proof text" of *Safferstone* v. *Tucker*, 235 Ark. 70, 357 S.W. 2d 3, that one of the prime duties of a school board is to conserve the resources of the district, is permitted to continue the process of eroding the wholesome rule abided by for well over a century, it will become meaningless. The *Burnett* and *Safferstone* statements may be used to justify almost anything the collective ingenuity of a school board might devise in the name of proper conduct of schools or conservation of its resources. Limitation would only be imposed when a court became disposed to find an "abuse of discretion," if the court could bring itself to decide that the evidence of abuse was "clear and convincing." In my opinion, this is little, if any, limitation. I feel bound to the result reached here by the majority on the basis of the decision in *Burnett,* in spite of my dissent there, but I also feel bound to resist further erosion of the wise limitation on school board powers traditionally followed by this court from the beginning.

Insofar as the use of appraisals made is concerned,

appellants availed themselves of the right to appear before the equalization board, according to the testimony of one of its members, who also said that the board, upon their complaint, made a reduction in the assessment of their property and that the Hortons unsuccessfully appealed from the board action to the county court. It was stipulated that an appeal to the circuit court was pending. Certainly, they are not now entitled to question the use of the appraisals in this proceeding.

I concur in the result.